[No. B024751. Second Dist., Div. Seven. July 27, 1988.]

CITY OF SANTA MONICA et al., Plaintiffs and Appellants, v. HENRY YARMARK et al., Defendants and Respondents.

[No. B024754. Second Dist., Div. Seven. July 27, 1988.]

CITY OF SANTA MONICA et al., Plaintiffs and Appellants, v. LUIGI DE LUCIA et al., Defendants and Respondents.

## COUNSEL

Robert M. Myers, City Attorney, Joseph Lawrence, Assistant City Attorney, Barry A. Rosenbaum, Deputy City Attorney, Joel M. Levy and Hadassa K. Gilbert for Plaintiffs and Appellants.

Gordon P. Gitlen, Daniel P. Beaver and Lawrence & Harding for Defendants and Respondents.

Lawrence & Harding, Christopher M. Harding, Kenneth L. Kutcher, John E. Mackel and David M. Shell as Amici Curiae on behalf of Defendants and Respondents.

## Opinion

LILLIE, P. J.—In this case we are called upon to decide whether the Ellis Act (Gov. Code, § 7060 et seq.) preempts portions of Santa Monica City Charter, article XVIII, section 1806, subdivision (i)—which prohibits eviction of tenants for the purpose of demolishing or otherwise removing controlled rental units from rental residential housing use absent proper permits from the City of Santa Monica (City)—and section 1803, subdivision (t)—which prohibits removal of rental units from the housing market by conversion, demolition, or other means absent a removal permit from the Santa Monica Rent Control Board—as they apply to prevent the owners of apartment buildings from evicting tenants in order to go out of the rental residential housing business absent the proper permits from the City and Board.

Following the decision of *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894], in which the constitutionality of a prior version of section 1803, subdivision (t),[1] was upheld against a due process challenge brought by a landlord who sought to evict his tenants and demolish his building rather than to await his tenants' voluntary departure or to sell his property, the California Legislature enacted Government Code section 7060 et seq. (Ellis Act or Act). The Ellis Act expressly states the Legislature's intent "to supersede any holding or portion of any holding in Nash v. City of Santa Monica, 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894] to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business. . . ." (Gov. Code, § 7060.7.) Government Code section 7060, subdivision (a) states: "No public entity, as defined in Section 811.2, shall, by statute, ordinance, or regulation, or by administrative action implementing any statute, ordinance or regulation, compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease."

We conclude sections 1806 and 1803 are invalid to the extent they conflict with the Ellis Act by prohibiting residential landlords from evicting tenants in order to go out of the rental residential housing business. We affirm the order denying preliminary injunction.

### Facts and Procedural Background

The material facts are not contested. Following passage of the Ellis Act, City and Board adopted emergency measures (Santa Monica Mun. Code,

---

[1] Unless otherwise indicated all section references are to Santa Monica City Charter, article XVIII.

art. IV, ch. 8B, § 4850 et seq.; Santa Monica Rent Control Bd. Reg., ch. 16, § 16000 et seq.) to protect tenants against potential abuses by landlords seeking to withdraw residential rental units under the authority of the Ellis Act. Respondent landlords' compliance with these local emergency measures is not disputed.[2]

Respondent landlords served or prepared to serve their tenants with 30-day eviction notices,[3] citing the Ellis Act. The tenants facing eviction have month-to-month tenancies and are in good standing. The landlords' plans for future use of the properties are not disclosed in the record and are not at issue herein.

Appellants City and Board filed suit for injunctive and declaratory relief against respondent landlords, contending the evictions were violative of sections 1806 and 1803, and were not authorized by the Ellis Act.[4] City and Board also argued that if the Ellis Act is deemed to authorize evictions for the purpose of going out of the rental residential housing business, then the Ellis Act violates article XI, sections 5 and 7 of the California Constitution.

City and Board also filed declarations by tenants stating they would be harmed by eviction due to various factors such as low income, age, physical disabilities, illness, and lack of private transportation. City and Board argued that landlords, on the other hand, would not be harmed by the issuance of the preliminary injunction because they could still collect rent

---

[2] Respondent landlords followed local ordinances and regulations by serving Board with notice of intent to withdraw residential rental units (Bd. Reg., ch. 16, § 16002, subd. (a)), recording notice of intent to withdraw with the Los Angeles County Recorder's Office (Bd. Reg., ch. 16, § 16002, subd. (b)), serving conformed copies of notice upon Board (Bd. Reg., ch. 16, § 16002, subd. (d)), notifying tenants of their rights (Bd. Reg., ch. 16, § 16002, subd. (f)), paying City the requisite tenant relocation counseling fees (Santa Monica Mun. Code, § 4854, subd. (a)), and creating escrow accounts holding tenant relocation assistance fees (Santa Monica Mun. Code, § 4853).

[3] Respondent Henry Yarmark owns an 18-unit residential rental building on Wilshire Boulevard in Santa Monica. On August 27, 1986, Yarmark served 30-day eviction notices on five of the seven tenants remaining in the building. (The remaining two tenants were to be vacated pursuant to a municipal court judgment.)

Respondents Henry and Regina Yarmark and Bernard and Rebecca Appelbaum co-own five residential rental buildings in Santa Monica—a one-unit building on 7th Street, three 3-unit buildings on 7th Street, and a twenty-nine-unit building on Santa Monica Boulevard—that were fully occupied except for six vacant units in the latter building. Although eviction notices were prepared, they had not been served at the time of the preliminary injunction hearing.

Respondents Luigi and Helvi De Lucia co-own a 14-unit residential rental building in Santa Monica on California Avenue. On November 4, 1986, the De Lucias served 30-day eviction notices on the 3 remaining tenants in their building.

[4] City and Board filed complaints for injunctive and declaratory relief against the Yarmarks and Appelbaums (L.A. Super. Ct. No. WEC 107026) and De Lucias (L.A. Super. Ct. No. WEC 108182) on September 24 and November 13, 1986, respectively.

during the period when they would not be able to otherwise use the land since they lacked conversion or demolition permits.

Norman and Dorothy Teufel, herein designated respondents,[5] had filed a complaint in intervention referred to in their "Respondent-Invervenors' Opening Brief" as "in support of the defendants [Yarmark and De Lucia]." They asserted that they also own Santa Monica rental property subject to the provisions of the Santa Monica rent control law and were in the process of removing their property from rental housing use under the Ellis Act. However, appellant City made it clear when the city attorney argued its motion for preliminary injunction against Yarmark and De Lucia in the trial court, that City and Board "didn't seek an injunction against" the Teufels and that their problems "are not part of this lawsuit, and they are not part of the lawsuit for several reasons." The City and Board's request for preliminary injunction was as to Yarmark and De Lucia only, and the trial court denied the request, concluding the evictions were authorized by the Ellis Act, and that City and Board failed to show a likelihood of success on the merits in proving the Act to be unconstitutional. Although the trial court recognized the tenants would suffer hardships not fully ameliorated by the City and Board's emergency measures requiring tenant relocation assistance and funds, the court concluded the hardships "cannot come into play absent a stronger showing that the Ellis Act is indeed unconstitutional." These appeals followed.

## DISCUSSION

In the instant case, respondent landlords seek to evict their tenants and remove their controlled units from rental residential housing use. City and Board contend the evictions violate section 1806, subdivision (i), which does not permit eviction for the purpose of "going out of business" except where the removal requirements of section 1803, subdivision (t) are met. It is undisputed that respondent landlords fail to meet the removal requirements of section 1803, subdivision (t). The issue before us is whether the Ellis Act has preempted City's charter amendment to the extent section 1806, subdi-

---

[5] The Teufels were named respondents in the notices of appeal filed by City and Board, but so naming them does not give them standing. The fact is that the order denying motion for preliminary injunction neither names the Teufels nor directly involves them in any manner. It is true that counsel for the Teufels argued in the trial court against granting the motion for preliminary injunction against Yarmark and De Lucia, but the city attorney made it clear that City and Board had not sought and were not seeking an injunction against the Teufels. Thus, had the motion been granted against the Yarmarks and De Lucias, it would not have affected the Teufels, and the Teufels would not have had any standing to appeal. Nevertheless, the Teufels have filed a "Respondents-Intervenors' Opening Brief" in this appeal. In light of the foregoing, we deem the Teufels' brief to be an amicus curiae brief and treat it as such.

vision (i) requires residential landlords who wish to evict tenants in order to "go out of business" to meet the removal requirements of section 1803, subdivision (t). We shall first describe the charter amendment's removal and eviction controls, and then consider whether sections 1803 and 1806 are invalid to the extent they conflict with the Ellis Act.

## A. Standard and Scope of Review

■ The traditional test that trial courts use in deciding whether or not to issue a preliminary injunction is to evaluate two interrelated factors: " 'The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.]' " (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) The trial court, after balancing the respective equities of the parties, then determines whether, pending trial on the merits, the defendant should or should not be restrained from exercising his claimed right. (*Ibid.*)

■ The granting or denial of a preliminary injunction does not constitute an adjudication of the ultimate rights in controversy. (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 218 [211 Cal.Rptr. 398, 695 P.2d 695].) ■ On appeal, the trial court's exercise of discretion will not be disturbed absent a showing that it has been abused. (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].)

Our Supreme Court recently explained in *Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at pages 286-287, that "[w]hen a trial court denies an application for a preliminary injunction, it implicitly determines that the plaintiffs have failed to satisfy either or both of the 'interim harm' and 'likelihood of prevailing on the merits' factors. On appeal, the question becomes whether the trial court abused its discretion in ruling on *both* factors. Even if the appellate court finds that the trial court abused its discretion as to one of the factors, it nevertheless may affirm the trial court's order if it finds no abuse of discretion as to the other." (Italics in original.)

In the instant case, the trial court denied the application for preliminary injunction after explicitly ruling on only one factor—that City and Board failed to show the "likelihood of prevailing on the merits." The trial court stated that the "interim harm" question did not "come into play absent a stronger showing" that City and Board would prevail on the merits.

City and Board argue that in this case, a different standard applies in reviewing the denial of the preliminary injunction because the validity of the Ellis Act can be decided as a matter of law as there are no disputed factual issues. (See *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17 [194 Cal.Rptr. 722].) In asserting this position on appeal, City and Board apparently abandon their argument raised below that the Ellis Act does not authorize respondents' attempted evictions and does not conflict with Santa Monica's removal and eviction controls. Moreover, City and Board do not argue that the trial court abused its discretion in deciding or failing to decide the "interim harm" question.

Respondents Yarmark and De Lucia agree that we may affirm the trial court order by invalidating sections 1803 and 1806 to the extent they conflict with the Ellis Act as a matter of law, but disagree that we may reverse the trial court order by finding the Ellis Act unconstitutional as a matter of law. They argue that because the trial court implicitly ruled in their favor in deciding the "interim harm" question, the trial court's order must be affirmed if its implied finding on the "interim harm" question did not constitute an abuse of discretion. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 289.)

Inasmuch as there are no material factual issues to be determined with respect to the question of whether sections 1803 and 1806 are invalid to the extent they conflict with the Ellis Act, we shall make a final determination of the question as if the case had gone to trial. In view of our holding that the Ellis Act preempts portions of sections 1803 and 1806, we shall affirm the order without reaching the "interim harm" question.

## B. *The State Preemption Doctrine*

Article XI, section 7 of the state Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Local ordinances and regulations in conflict with general laws are void. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 290.)

"Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject [were] otherwise one properly characterized as a 'municipal affair.' [Citation.]" (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681].)

The first step in a preemption analysis is to determine whether the local regulation explicitly conflicts with any provision of state law. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 291.)

■ If the local legislation does not expressly contradict or duplicate state law, its validity must be evaluated under implied preemption principles. "In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme. There are three tests: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.' [Citation.]" (*People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 485 [204 Cal.Rptr. 897, 683 P.2d 1150], quoting *In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809].)

## C. Santa Monica's Removal Controls

The City by initiative added article XVIII, which contains section 1803, to its charter in 1979, in response to a severe rental housing shortage precipitated in large measure by what came to be known as the "Demolition Derby." (*Nash* v. *City of Santa Monica, supra,* 37 Cal.3d 97, 100.) During a "15-month period . . . Santa Monica landlords razed over 1,300 rental units and converted hundreds of other such units into condominiums. Rental housing units were removed from the market at 10 times the rate of removals (relative to population) of neighboring Los Angeles." (*Ibid.,* fn. omitted.)

Among other things, section 1803 provides Board with authority to set and adjust maximum rents and to control the removal of rental units from the housing market. Subdivision (t)[6] of section 1803 requires a landlord to

---

[6]Section 1803, subdivision (t) provides in part as follows: "(1) Any landlord who desires to remove a controlled rental unit from the rental housing market by demolition, conversion or other means is required to obtain a permit from the Board prior to such removal from the rental housing market in accordance with the rules and regulations promulgated by the Board. In order to approve such a permit, the Board is required to find that the landlord cannot make a fair return by retaining the controlled rental unit.

"(2) Notwithstanding the foregoing provisions of this subsection, the Board may approve such a permit: (i) If the Board finds that the controlled rental unit is uninhabitable and is incapable of being made habitable in an economically feasible manner, or

obtain a permit before removing a controlled rental unit from the rental housing market by demolition, conversion, or other means. Where the landlord makes a fair return by retaining the controlled unit, the Board may not grant a removal permit unless it finds that (1) the controlled rental unit is uninhabitable and is incapable of being made habitable in an economically feasible manner, or (2) the removal permit is sought so that the property may be developed with multifamily dwelling units and as a condition of approval the permit applicant agrees that the units will be rent controlled and that at least 15 percent of the controlled rental units will be affordable by persons of low income.

In *Nash* v. *City of Santa Monica, supra,* 37 Cal.3d 97, the California Supreme Court upheld the validity of a prior version of section 1803, subdivision (t), against a due process challenge brought by a residential landlord, Nash, who wished to go out of business.[7] Relying on the dismissal of appeal by the United States Supreme Court in *Fresh Pond Shopping Center, Inc.* v. *Callahan* (1983) 464 U.S. 875 [78 L.Ed.2d 215, 104 S.Ct. 218], letting stand the Massachusetts Supreme Judicial Court decision upholding the constitutionality of antidemolition controls similar to those contained in section 1803, subdivision (t) against both taking and due process challenges, the California Supreme Court concluded section 1803, subdivision (t), did not violate the due process clause of the federal Constitution. (*Nash* v. *City of Santa Monica, supra,* 37 Cal.3d at p. 108.) The court also concluded the provision was not violative of the state Constitution because Nash raised no issue concerning its procedural fairness, and the predemolition removal permit requirement was found to be reasonably related to City's legitimate goal of maintaining adequate rental housing for its citizens. (*Id.* at p. 109.)

## D. *Santa Monica's Eviction Controls*

Section 1806, which limits the grounds upon which a landlord may bring an action to repossess a rent-controlled unit, serves as an adjunct to section 1803's removal controls. (*Nash* v. *City of Santa Monica, supra,* 37 Cal.3d at p. 105.) Section 1806 requires landlords to state the cause for termination in

---

"(ii) If the permit is being sought so that the property may be developed with multifamily dwelling units and the permit applicant agrees as a condition of approval that the units will not be exempt from the provisions of this Article pursuant to Section 1801(c) and that at least fifteen (15) percent of the controlled rental units to be built on the site will be at rents affordable by persons of low income."

[7]Under the prior version of subdivision (t) reviewed in *Nash,* landlords who owned habitable property and did not wish to rebuild could obtain a demolition permit only upon a finding that (1) the building is not occupied by persons of low or moderate income, (2) cannot be afforded by persons of low or moderate income, (3) removal will not adversely affect the housing supply and (4) the owner cannot make a reasonable return on investment. (*Nash* v. *City of Santa Monica, supra,* 37 Cal.3d at p. 101.)

any eviction notice, and places the burden of proving compliance with its provisions on the landlord in any action brought to recover possession of a controlled rental unit.

Subdivision (i) of section 1806 imposes substantive limitations upon the grounds for which a landlord may evict a tenant pursuant to the summary eviction procedures of section 1159 et seq. of the Code of Civil procedure. Section 1806, subdivision (i) prohibits eviction of tenants from controlled rental units unless: "The landlord seeks to recover possession to demolish or otherwise remove the controlled rental unit from rental residential housing use after having obtained all proper permits from the City of Santa Monica."[8]

### E. Sections 1803 and 1806 Conflict With the Ellis Act

■ As we stated earlier, a charter amendment is invalid to the extent it attempts to regulate a field that is fully occupied by general state law. (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 150.) The Ellis Act imposes limits on a city's right to exercise its police power to create substantive defenses for use in summary eviction proceedings. The Act specifically states: "No public entity . . . shall . . . compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." (Gov. Code, § 7060, subd. (a).)

■ City's removal and eviction controls, as applied, restrict respondent landlords' right to evict tenants in order to go out of business. The charter amendment prohibits landlords who can make a fair return by retaining and renting the controlled units, from going out of business *unless* the controlled units are *uninhabitable and incapable of being made habitable in an economically feasible manner* (§ 1803, subd. (t)(2)(i)), or *unless* the landlords promise to develop new multifamily dwelling units subject to rent control, at least 15 percent of which will be affordable by persons of low income (§ 1803, subd. (t)(2)(ii)).

We believe Santa Monica's removal and eviction controls directly contradict an area fully occupied by general law. The Legislature passed the Ellis Act in order "to supersede any holding or portion of any holding in Nash v.

[8] Although we characterize the eviction limitations set forth in section 1806, subdivision (i) as substantive rather than procedural, we do not decide whether the permit requirement contained in subdivision (i) of section 1806 imposes a procedural barrier on landlords seeking to utilize summary eviction procedures of the Code of Civil Procedure, in violation of *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 151-152 [130 Cal.Rptr. 465, 550 P.2d 1001]. Respondent landlords do not contend that the permit requirement imposes a procedural barrier.

City of Santa Monica, 37 Cal.3d 97 to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business . . . ." (Gov. Code, § 7060.7.)

The legislative history of the Act consistently demonstrates the purpose of the Act is to allow landlords who comply with its terms to go out of the residential rental business by evicting their tenants and withdrawing all units from the market, even if the landlords could make a fair return, the property is habitable, and the landlords lack approval for future use of the land. In addition to the statement of legislative intent contained in the Act (Gov. Code, § 7060.7), the various legislative committee reports concerning the Act indicate the Act was intended to overrule the *Nash* decision so as to permit landlords the unfettered right to remove all residential rental units from the market, consistent, of course, with guidelines as set forth in the Act and adopted by local governments in accordance thereto. (See Sen. Com. on Judiciary (1985-1986) Analysis of Sen. Bill No. 505, Local Controls Residential Real Property, p. 2 ["The purpose of this bill is to overturn *Nash* and to provide landlords the unfettered right to remove rental units from the marketplace"]; Sen. Rules Com. Analysis of Sen. Bill No. 505 (Sept. 12, 1985) p. 3 ["This bill would preempt any local ordinance that prohibits landlords from removing a rental unit from the marketplace"]; Assem. Com. on Judiciary Hg. Rep. on Sen. Bill 505 (Aug. 20, 1985) p. 3 ["This bill would preempt any local ordinance that prohibits landlords from removing a rental unit from the marketplace"]; Assem. Off. of Research, Conf. Com. Rep. on Sen. Bill No. 505 (Sept. 10, 1985) p. 4 ["This bill would preempt any local ordinance that prohibits landlords from removing a rental unit from the marketplace"].)

F. *The Ellis Act Regulates an Area of Statewide Concern*

City and Board contend the Ellis Act is unconstitutional because it invades its home rule power as a charter city to make laws in respect to municipal affairs. (Cal. Const., art. XI, § 5, subd. (a).) They argue the trial court abused its discretion and erred as a matter of law in ruling that the Ellis Act regulates an area of statewide concern. This contention is meritless.

A city's power to enact local rent control ordinances such as sections 1803 and 1806 is derived from its police power. As our Supreme Court explained in *Birkenfeld,* our state Constitution "confers upon all cities and counties the power to 'make and enforce within [their] limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' (Cal. Const., art. XI, § 7.) A city's police power under this provision can be applied only within its own territory and is subject to

displacement by general state law but otherwise is as broad as the police power exercisable by the Legislature itself. [Citations.]" (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 140.)

City and Board have failed to cite a single case where a state statute preempting a local police power ordinance was deemed unconstitutional for treading on an area of exclusive municipal concern. More specifically, as our Supreme Court stated in *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261], ordinances creating substantive defenses to eviction are police power measures subject to preemption by general law: "Although municipalities have power to enact ordinances creating substantive defenses to eviction (*Birkenfeld, supra,* 17 Cal.3d 129, 149), such legislation is invalid to the extent it conflicts with general state law. (*Id.* at p. 152; Cal. Const., art. XI, § 7.)" (*Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at p. 697.) As our Supreme Court has stated, "rent control is not a municipal affair as to which a charter provision would prevail over general state law under article XI, section 5 of the Constitution. [Citations.] Accordingly the charter amendment cannot be given effect to the extent that it conflicts with general laws either directly or by entering a field which general laws are intended to occupy to the exclusion of municipal regulation. [Citations.]" (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 141, fns. omitted.)

 We strongly disagree with City and Board's contention that the Ellis Act is not part of a comprehensive scheme addressing aspects of landlord-tenant affairs. It is self-evident from the language of the Act that the Legislature intended to accomplish at least two objectives. The first is to prevent public entities from acting in a manner inconsistent with the Act such as to prevent landlords from withdrawing units and evicting tenants so they may go out of business. And the second is to allow landlords to utilize the summary eviction procedures in order to go out of business without the restraint of substantive defenses provided by local rent control ordinances such as sections 1803 and 1806. Thus we do not share City and Board's view that the Ellis Act "does not even purport to regulate in the narrower field of substantive eviction controls."

 Even if there is doubt as to whether the Ellis Act regulates a field of state-wide concern, the doubt must be resolved in favor of the state: "When there is a doubt as to whether an attempted regulation relates to a municipal or to a state matter, or if it be the mixed concern of both, the doubt must be resolved in favor of the legislative authority of the state [citations]." (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385].)

Moreover, "[i]n considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act. [Citations.] Thus, wherever possible, we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute." (*California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].)

The Ellis Act is a general state law. Together with other statutes governing landlord-tenant relationships, it completely occupies the field of sub-·stantive eviction controls over landlords who wish to withdraw *all* accommodations[9] from the residential rental market in order to go out of business.

The Act contains explicit boundaries, leaving areas for local control in a fashion consistent with its terms. For example, the Act does not apply to landlords who wish to withdraw fewer than all accommodations from the residential rental market. (Gov. Code, § 7060.7, subd. (3).) The Act bears no effect on a public entity's power under law to enforce residential rental or lease contracts,[10] regulate land use through planning, zoning, and subdivision map approvals, or mitigate any adverse impact on displaced tenants of residential hotels or other accommodations. (Gov. Code, § 7060.1.) In particular, the Act does not interfere with local governmental authority over regulation of the conversion of existing housing to condominiums or other subdivided interests. (Gov. Code, § 7060.7, subd. (1).)

The Act also explicitly leaves in place the procedural protections designed to prevent abuse of the right to evict tenants. (Gov. Code, § 7060.7, subd. (2).) The Act does not supersede statutes pertaining to relocation assistance for displaced persons (Gov. Code, § 7260 et seq.), the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), unfair competition (Bus. & Prof. Code, § 17200 et seq.), personal rights (Civ. Code, § 43 et seq.), landlord-tenant relationships (Civ. Code, § 1925 et seq.), summary proceedings for obtaining possession of real property (Code

---

[9] "Accommodations" means the residential rental units in any detached physical structure containing four or more residential rental units, and with respect to a detached physical structure containing three or fewer residential rental units, the residential rental units in that structure and in any other structure located on the same parcel of land. (§ 7060, subd. (b).)

[10] The Act specifically provides that it does not relieve any party to a lease or rental agreement of the duty to perform any obligation under that lease or rental agreement. (Gov. Code, § 7060.1, subd. (e).)

Civ. Proc., § 1159 et seq.),[11] and community redevelopment (Health & Saf. Code, § 33000 et seq.). (Gov. Code, § 7060.1, subd. (d).)

Concerned about the possible adverse effect on rent control ordinances, the Legislature included provisions to insure against the removal of rental units for the sole purpose of circumventing rent control ordinances by, e.g., subjecting withdrawn accommodations to rent control if offered again for residential purposes. (Gov. Code, § 7060.2.) Also, the Act contains specific guidelines for public entities wishing to enact supplemental ordinances consistent with the Act. (Gov. Code, §§ 7060.2-7060.5.)

Although we mention these above aspects of the Act, we do so only to show the Legislature's concern for preventing abuses of the right to withdraw controlled units from the residential rental market.　■■■　But in conducting our review, we do not concern ourselves with the wisdom of the Legislature in passing the Ellis Act. "The issue is not whether the Legislature acted wisely but whether it acted constitutionally in light of article XI, section 5 of the California Constitution. The question is not whether the purpose of the statewide legislation may conceivably have been accomplished by means less intrusive upon the power of cities, but whether the legislation implements a purpose which should bind equally both charter and general law municipalities." (*City of Los Angeles* v. *Department of Health* (1976) 63 Cal.App.3d 473, 481 [133 Cal.Rptr. 771].)

■■■　Local rent control laws do not address an area of exclusive municipal concern, and the Ellis Act regulates an area of at least partial statewide concern—the right to withdraw controlled units from the residential rental market. Because this is an area of the mixed concern of both, we resolve the question in favor of the legislative authority of the state. (*Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d at p. 681.)

■■■　Accordingly, the Ellis Act is not invalid for regulating an area of exclusive municipal concern.

G.　*The Ellis Act Constitutes Affirmative Legislation*

■■■　City and Board contend the Ellis Act is unconstitutional because it fails to affirmatively occupy the field in which it purports to legislate, and is merely prohibitory of local regulation. We disagree.

---

[11] Government Code, section 7060.6 provides that "If an owner seeks to displace a tenant or lessee from accommodations withdrawn from rent or lease pursuant to this chapter by an unlawful detainer proceeding, the tenant or lessee may appear and answer or demur pursuant to Section 1170 of the Code of Civil Procedure and may assert by way of defense that the owner has not complied with the applicable provisions of this chapter, or statutes, ordinances, or regulations of public entities adopted to implement this chapter, as authorized by this chapter."

The general principle of law upon which City and Board rely is set forth in *Ex parte Daniels* (1920) 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172], wherein the court stated: "It must, of course, be conceded that a mere prohibition by the state legislature of local legislation upon the subject of the use of the streets, without any affirmative act of the legislature occupying that legislative field, would be unconstitutional and in violation of the express authority granted by the state constitution to the municipality to enact local regulations. In other words, an act by the state legislature in general terms that the local legislative body would have no power to enact local, police, sanitary, or other regulations, while in a sense a general law, would have for its effective purpose the nullification of the constitutional grant, and, therefore, be invalid. [Citation.]" (*Id.* at p. 641; see also *Wallace v. Regents, etc.* (1925) 75 Cal.App. 274, 278-279 [242 P. 892].)

Citing *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at pages 147-149, City and Board claim the state has not affirmatively acted in the field of substantive eviction controls. But even though Santa Monica's substantive eviction controls appear to be quite similar to the substantive eviction controls upheld in *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129, 147-153,[12] we question the continued applicability of the court's reasoning because *Birkenfeld* was decided prior to the passage of the Ellis Act.

*Birkenfeld* invalidated Berkeley's charter amendment to the extent it required a landlord to obtain a certificate of eviction from the City of Berkeley before seeking to recover possession of a rent-controlled unit pursuant to sections 1159 through 1179a of the Code of Civil Procedure.[13] (*Id.*

---

[12] Similar to the eviction controls discussed in *Birkenfeld,* section 1806's eviction controls can be grouped into three categories. (See *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129, 147-148.) The first consists of breaches of the tenant's duties to the landlord: failure to pay rent or to perform an obligation of the tenancy after notice (§ 1806, subds. (a), (b)), commission of a nuisance on or of substantial damage to the rented premises (§ 1806, subd. (c)), conviction of using the premises for an illegal purpose (§ 1806, subd. (d)), refusing the landlord reasonable access for repairs, or for showing to a prospective purchaser (§ 1806, subd. (f)), or transferring possession to an unauthorized subtenant (§ 1806, subd. (g)). The second category consists of the landlord's good faith intention to withdraw the unit from the rental housing market for occupancy by the landlord or the landlord's specified relatives (§ 1806, subd. (h)), or for demolition or removal of the controlled rental unit from rental residential housing use after having obtained all proper permits from the City (§ 1806, subd. (i)). The third category is the refusal of the tenant holding at the expiration of the rental housing agreement to execute a written renewal or extension for the same duration as the original agreement and on terms that are materially the same (§ 1806, subd. (e)).

[13] Berkeley's charter amendment required a landlord, before commencing unlawful detainer proceedings, to obtain a certificate of eviction from the rent control board. The board was to give notice of the application for the certificate to the tenant who had five days in which to request a full hearing, to be conducted and determined within specified time limits. (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 150.) In order to be granted a certificate, the landlord was to prove the existence of permissible grounds for eviction and that the tenancy

at p. 151.) The court stated: "Unlike the limitations imposed by the charter amendment upon chargeable rents and upon the grounds for eviction, which can affect summary repossession proceedings only by making sub-stantive defenses available to the tenant, the requirement of a certificate of eviction raises procedural barriers between the landlord and the judicial proceeding. Thus if a tenant were permitted to raise as a defense in a summary proceeding that the landlord had failed to obtain a certificate of eviction, *the terms of the charter amendment would not permit the landlord to meet the defense by showing that he could have qualified for the cer-tificate had he applied for it but would preclude him from relief simply because he had never gone through the proper procedures before the rent control board.*" (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 151, fns. omitted.)

But *Birkenfeld* upheld substantive limitations imposed on the grounds for eviction, finding they did not necessarily conflict with general state law governing unlawful detainer proceedings (Civ. Proc. Code, § 1159 et seq.). (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 149.) The Court stated: "The purpose of the unlawful detainer statutes is procedural. The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end. In contrast the charter amendment's elimination of particular grounds for eviction is a limitation upon the landlord's property rights under the police power, giving rise to a substantive ground of defense in unlawful detainer proceedings. The mere fact that a city's exercise of the police power creates such a defense does not bring it into conflict with the state's statutory scheme." (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 149.)

At the time *Birkenfeld* was decided, California had no state rent control statute. (*Id.* at p. 141.) The court thus concluded that the Berkeley ordi-nance was within the city's police power because there was no "legislative indication of 'a paramount state concern [which] will not tolerate further or additional local action.'" (*Id.* at p. 142, quoting *In re Hubbard, supra,* 62 Cal.2d 119, 128. See also *Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at p. 655 [41 Cal.Rptr. 393, 396 P.2d 809].)

had been properly terminated by notice and that there were no outstanding code violations on the premises other than those substantially caused by the present tenants. (*Ibid.*) Addi-tionally, *no certificate was to be granted where the eviction was found to be in retaliation for reporting code violations or charter amendment violations, or for organizing other tenants, or for enforcing rights under the charter amendment.* (*Ibid.*) A finding adverse to the land-lord on the existence of code violations on the premises or on the issues of retaliation preclud-ed issuance of the certificate regardless of the existence of any of the grounds for eviction per-mitted by the charter amendment. (*Ibid.*)

Although there is still no state rent control statute, we cannot uphold Santa Monica's substantive eviction controls on the basis of *Birkenfeld* because public entities may no longer limit a landlord's substantive grounds for eviction in a fashion contrary to the Act when the landlord seeks to go out of the residential rental business. The mere fact that the language of the Ellis Act prohibits or restricts the police power of local governments does not render the Act unconstitutional under the theory of *Ex parte Daniels, supra,* 183 Cal. at page 641. The Legislature previously put in place a wide array of laws regulating landlord-tenant relationships, particularly laws regulating summary eviction procedures. In passing the Ellis Act, the Legislature has explicitly indicated it will tolerate no local measures providing substantive grounds for defenses in unlawful detainer actions brought by landlords who wish to go out of business. Those substantive defenses are invalid to the extent they conflict with the Ellis Act. (See *Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at p. 697.)

## H. *Conclusion*

We conclude that Santa Monica's removal and eviction controls conflict with the Ellis Act, and thus are invalid to the extent they are applied to prevent respondent landlords from evicting their tenants so that they may withdraw their controlled units from the residential rental market and go out of business.

In view of our conclusion that the Ellis Act has preempted portions of Santa Monica's removal and eviction controls, we hold that the preliminary injunction was properly denied as a matter of law. (*DeYoung* v. *City of San Diego, supra,* 147 Cal.App.3d at p. 17.)

## DISPOSITION

The order is affirmed. Respondents shall recover costs on appeal.

Johnson, J., and Kolts, J.,* concurred.

On August 17, 1988, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied October 12, 1988.

---

* Assigned by the Chairperson of the Judicial Council.