[No. B031270. Second Dist., Div. Three. Sept. 12, 1988.]

FARIBORZ JAVIDZAD et al., Plaintiffs and Respondents, v. CITY OF SANTA MONICA et al., Defendants and Appellants; HENRY YARMARK et al., Interveners and Respondents.

COUNSEL

Robert M. Myers, City Attorney, Joseph Lawrence, Assistant City Attorney, Barry A. Rosenbaum, Deputy City Attorney, Joel M. Levy and Hadassa K. Gilbert for Defendants and Appellants.

No appearance for Plaintiffs and Respondents.

Lawrence & Harding and Christopher M. Harding for Amici Curiae on behalf of Respondents.

David M. Shell for Interveners and Respondents.

OPINION

KLEIN, P. J.—Defendants and appellants the City of Santa Monica (City), the Santa Monica Rent Control Board (Board), and William Rome (Rome)[1] (collectively, appellants), appeal a judgment granting a petition for peremptory writ of mandate. ▇ The judgment directed the City and the Board to process an application by plaintiffs and respondents Fariborz Javidzad, Faramarz Javidzad, and Moussa Javidzad (collectively, the Javidzads) for a demolition permit without requiring the Javidzads first to obtain from the

---

[1] Rome was the building officer of the City charged with the duty of issuing and denying building permits and demolition permits.

Board a removal permit authorizing the permanent removal of the property from the rental housing market.

The Ellis Act (the Act) (Gov. Code, § 7060 et seq.)[2] is in direct conflict with the City Charter, article XVIII, section 1803(t) (§ 1803(t)), which section requires a landlord seeking to withdraw a controlled rental unit from the housing market first to obtain a removal permit; therefore, the Act preempts section 1803(t). The City's argument that section 1803(t) is merely a land use regulation consistent with the Act is rejected. For these reasons, the judgment is affirmed.

## STATEMENT OF THE CASE

In 1979, the City electorate adopted an initiative measure adding comprehensive rent control to the City Charter. The restrictions on removing units from rental housing use are set forth in section 1803(t),[3] which section prohibits the removal of rental housing absent issuance of a removal permit by the Board. A removal permit is authorized only if the property owner cannot earn a fair return by retaining the property in rental housing use, or the property is uninhabitable and is incapable of being made habitable in an economically feasible manner, or if the applicant intends to develop the property with multifamily housing which will be rent controlled and contain at least 15 percent low income housing.

---

[2] All subsequent statutory references are to the Government Code, unless otherwise indicated.

[3] Section 1803(t) presently provides in its entirety: "REMOVAL OF CONTROLLED UNIT FROM RENTAL HOUSING MARKET: [¶] (1) Any landlord who desires to remove a controlled rental unit from the rental housing market by demolition, conversion or other means [e.g. pursuant to the Act] is required to obtain a permit from the Board prior to such removal from the rental housing market in accordance with rules and regulations promulgated by the Board. In order to approve such a permit, the Board is required to find that the landlord cannot make a fair return by retaining the controlled rental unit. [¶] (2) Notwithstanding the foregoing provisions of this subsection, the Board may approve such a permit: [¶] (i) If the Board finds that the controlled rental unit is uninhabitable and is incapable of being made habitable in an economically feasible manner, or [¶] (ii) If the permit is being sought so that the property may be developed with multifamily dwelling units and the permit applicant agrees as a condition of approval, that the units will not be exempt from the provisions of this Article pursuant to Section 1801(c) [controlled rental units] and that at least fifteen (15) percent of the controlled rental units to be built on the site will be at rents affordable by persons of low income. [¶] (3) The Housing Element of the General Plan of the City of Santa Monica shall at all times contain a provision that neither the City Council nor any City agency shall approve an application for tentative subdivision map or tentative parcel map for a converted unit until and unless the applicant first obtains a removal permit as required by this Section. This subsection shall not apply to any tentative subdivision map or tentative parcel map approved in accordance with Article XX relating to tenant ownership rights. [¶] (4) The Board shall render its final decision within one hundred and twenty (120) days of the filing of a completed application under this section." (Material in brackets ours.)

In *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894], the Supreme Court upheld the constitutionality of an earlier version of section 1803(t), which section likewise required a landlord seeking to remove a controlled rental unit from the rental housing market to obtain the approval of the Board. *Nash* concluded "while the challenged provision may be said to implicate interests which are entitled to a high degree of constitutional protection—including one's choice whether to remain in a particular business or occupation—the actual limitation upon those interests posed by the challenged provision is minimal and not significantly different from other, constitutionally permissible, limitations upon the use of private property imposed by government regulation. At the same time, the provision, by protecting existing tenants against eviction and the scarce supply of residential housing in Santa Monica against further erosion, clearly serves important public objectives." (*Id.,* at p. 100.) Because there was only an "indirect and minimal burden imposed upon [the landlord's] asserted liberty interest by the demolition control provisions" (*id.,* at p. 104), and the ordinance was "reasonably related to the legitimate goal of maintaining adequate rental housing for Santa Monica's citizens" (*id.,* at p. 109), section 1803(t) was held valid.

In response to the *Nash* case, the Legislature passed the Act. It provides in relevant part: "No public entity, as defined in Section 811.2, shall, . . . , compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." (§ 7060, subd. (a).) The Act expressly states the Legislature's intent "to supersede any holding or portion of any holding in *Nash* v. *City of Santa Monica,* 37 Cal.3d 97 to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business." (§ 7060.7.)

## FACTUAL & PROCEDURAL BACKGROUND

On September 12, 1986, Henry and Regina Yarmark (Yarmarks), the owners of commercially zoned real property at 1719 Wilshire Boulevard in Santa Monica, served eviction notices on their tenants pursuant to the Act. On September 24, 1986, the City and the Board filed suit to enjoin the evictions. On November 26, 1986, the superior court rejected the request for a preliminary injunction, allowing the evictions to proceed. The City and the Board appealed that decision, which was reviewed in *City of Santa Monica* v. *Yarmark* (1988) 203 Cal.App.3d 153 [249 Cal.Rptr. 732].

The Yarmarks complied with local requirements adopted in response to the Act. They served the Board with notice of intent to withdraw residential rental units, recorded notice of intent to withdraw with the Los Angeles County Recorder's Office, served conformed copies of the notice upon the

Board, notified the tenants of their rights, paid the City the requisite tenant relocation counseling fees, and created escrow accounts for the tenant relocation assistance fees. (*City of Santa Monica* v. *Yarmark, supra,* 203 Cal.App.3d at p. 158, fn. 2.)

On March 26, 1987, the Yarmarks filed an application for a demolition permit for the subject property with the City's building and safety department. The City forwarded the application to the Board for its approval because the Yarmarks had not obtained a removal permit from the Board, a condition precedent for a demolition permit to issue.

On June 10, 1987, the Javidzads, long-term lessees of the Yarmarks' property, filed suit seeking injunctive, declaratory and mandamus relief to compel the immediate issuance of the demolition permit. The Javidzads maintained no removal permit could be required, because the subject property had been withdrawn from the housing market pursuant to the Act, and once withdrawn, the property was beyond the jurisdiction of the Board.

In its ruling, the trial court determined the Act is a state general law on a subject of statewide concern and supersedes any conflicting city charter or ordinance or regulation, and to the extent any local provisions were inconsistent with the Act, they were invalid. Section 1803(t) was held invalid because its effect was to compel a landlord to remain in the rental housing business if the landlord did not qualify under any of the grounds set forth in that section.

The trial court reasoned: "The requirements of § 1803(t) are thus in direct opposition to the Ellis Act, and there is no way to read the ordinance as consistent with the Ellis Act on this point. A Removal Permit could not be given under § 1803(t) to a landlord who has gone out of the rental business for any reasons other than those narrow reasons expressly set out in the section. Under § 1803(t), landlords, such as plaintiffs, cannot remove their property from the residential rental market in order simply to go out of that business, absent a showing of uninhabitability, lack of fair return, etc. The plain effect of this Charter provision is to compel the landlord to remain in the rental business at that particular location since it allows no means to permit the landlord to just simply go out of that business. By contrast, the Ellis Act contains no such limitations. The Court must refuse to require a Removal Permit under § 1803(t)."

The trial court therefore directed the City and the Board to process the Javidzads' application for a demolition permit without requiring a removal permit from the Board. However, because the Act did not otherwise abrogate the City's police power or land use laws, the Javidzads' request for a

demolition permit to issue forthwith was held to be excessive, as valid reasons under City law might exist to deny the permit or place limitations on it.

On November 13, 1987, the City, the Board, and Rome filed the instant appeal, appealing the judgment to the extent it directed the City and the Board to process the Javidzads' application for a demolition permit without requiring a removal permit from the Board.

On July 27, 1988, Division Seven of this District filed its opinion in *City of Santa Monica v. Yarmark, supra,* 203 Cal.App.3d 153, affirming the order denying the request to enjoin the evictions by the Yarmarks. In that appeal, the City contended the evictions violated the rent control law and were not authorized by the Act, and assuming the Act did authorize the evictions, the Act would be an unconstitutional invasion of the City's home rule power as a charter city.

The *Yarmark* court concluded the Act regulates an area of statewide concern, and Santa Monica's removal and eviction controls directly contradicted an area fully occupied by general law. In passing the Act, the Legislature explicitly indicated it would tolerate no local measures providing substantive grounds for defenses in unlawful detainer actions brought by landlords who wish to go out of business. (*City of Santa Monica v. Yarmark, supra,* 203 Cal.App.3d at pp. 166-167.) Accordingly, Santa Monica could not require residential landlords who seek to evict tenants in order to go out of business first to obtain section 1803(t) removal permits.

CONTENTIONS

Rather than attacking the validity of the Act, appellants here contend section 1803(t) comports with the Act.

Appellants submit section 1803(t) is a legitimate land use regulation which does not implicate a landlord's right to cease operating residential rental property but instead simply regulates the *subsequent* use of such property after the owner has stopped rental operations.

DISCUSSION

1. *Appellants' argument that section 1803(t) is a land use regulation consistent with the Act fails.*

To reiterate, the Act expressly states its intent "to supersede any holding, or portion of any holding in *Nash* v. *City of Santa Monica,* 37 Cal.3d 97 to

the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business." (§ 7060.7.)

The Act further states it "is not otherwise intended to do any of the following: [¶] (1) Interfere with local governmental authority over land use, including regulation of the conversion of existing housing to condominiums or other subdivided interests." (§ 7060.7.)

The Act also sets forth at section 7060.1: "Notwithstanding Section 7060, nothing in this chapter does any of the following: . . . [¶] (b) Diminishes or enhances, except as specifically provided in Section 7060.2, any power which currently exists or which may hereafter exist in any public entity to grant or deny any entitlement to the use of real property, including, but not limited to, planning, zoning, and subdivision map approvals."

Appellants submit the trial court's ruling nullifies the effect of these portions of the Act which provide the Act does not disrupt a local agency's control over land use. They insist the removal restrictions embodied in section 1803(t) are merely local land use controls and are therefore *consistent* with the Act.

Appellants' argument misconstrues the import of the subject sections of the Act, which authorize continued local land use controls to the extent they *comport* with the Act. As the trial court here and *City of Santa Monica v. Yarmark, supra,* 203 Cal.App.3d 153, have both found, section 1803(t) *conflicts* with the Act because it impermissibly conditions the landlord's right to go out of business on compliance with requirements not found in the Act.

In arguing that section 1803(t) is consistent with the Act, appellants seek to characterize the removal permit requirement as a land use regulation "authorizing the permanent demolition, conversion, alteration, etc. of the units."

The contention is unpersuasive. Section 1803(t), set forth *ante* in full, does not purport to regulate the *subsequent* use of property following its withdrawal from the rental market. However, the section does prescribe standards governing the Board's approval of a removal permit in the first instance and thus infringes on a landlord's decision to go out of the rental housing business and thereby directly conflicts with the Act.

Appellants also argue that in adopting the Act, the Legislature intended to supersede *Nash* only to the extent *Nash* compelled landlords to remain in business. They submit that in passing the Act, the Legislature intended

nothing more than to enable a landlord to go out of business by evicting all the tenants residing in a building, and a property owner who has done so has obtained the full benefit of the Act. Appellants do recognize the denial of a removal permit precludes the redevelopment of a property. They insist, however, a landlord who is thereby left with a vacant apartment building is merely paying the price of choosing to go out of business!

Appellants' strained reading of the Act would result in an absurdity. Denying a section 1803(t) removal permit to a landlord who has gone out of the rental housing business imposes a prohibitive price on the exercise of the right under the Act. Appellants' continued adherence to the removal permit requirement after the Legislature has spoken flouts the will of that body in adopting the Act.

While appellants repeatedly argue a landlord's right to go out of business pursuant to the Act does not automatically entitle an owner to demolish units or alter the use of the property, the City's continuing regulatory power is not in dispute. The trial court made it clear that notwithstanding the Act, the City otherwise retains its police power with respect to land use, and therefore denied the Javidzads' request for a demolition permit to issue forthwith. Likewise, amici curiae recognize the owners, in any redevelopment of the property, are subject to and must comply with all local planning and zoning laws.

Contrary to appellants' protestations, the invalidation of the removal permit process in no way impairs the City's power to regulate the subsequent use of the property. Our holding merely relieves landlords who seek to exercise their rights under the Act from complying with the onerous conditions of section 1803(t).

### CONCLUSION

Section 1803(t) does not purport to regulate the *subsequent* use of the property following its removal from the rental market, but rather impermissibly burdens a landlord's right to go out of business under the Act.

While the requirement that a removal permit be obtained is superseded by the Act, the City otherwise retains its police power to regulate the particulars of demolition and the redevelopment of property following its withdrawal from the rental housing market.

### DISPOSITION

The judgment directing appellants to process the Javidzads' demolition permit application without regard to section 1803(t) is affirmed. Because it

is undisputed that the Yarmarks have complied with local ordinances and regulations governing the withdrawal of residential rental units under the Act (*City of Santa Monica* v. *Yarmark, supra,* 203 Cal.App.3d 153, 158, fn. 2), and the subject property has been withdrawn from the rental market, appellants cannot interpose the local rent control law to resist the demolition permit, the issuance of which is merely a matter for the City Building and Safety Division.

Appellants to bear costs on appeal.

Arabian, J., and Croskey, J., concurred.

A petition for a rehearing was denied October 7, 1988, and appellant's petition for review by the Supreme Court was denied December 8, 1988.