[No. B101751. Second Dist., Div. Five. Apr. 7, 1997.]

LOS ANGELES LINCOLN PLACE INVESTORS, LTD., et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III(C) and (D).

54

**COUNSEL**

James K. Hahn, City Attorney, Claudia McGee Henry and Anthony Saul Alperin, Assistant City Attorneys, and Jeri L. Burge, Deputy City Attorney, for Defendants and Appellants.

Irell & Manella, Allan J. Abshez and Elizabeth A. Camacho for Plaintiffs and Appellants.

**OPINION**

**TURNER, P. J.—**

### I. INTRODUCTION

The City of Los Angeles (city) appeals from a judgment declaring Los Angeles Municipal Code former section 91.0303(a)5.[1] unconstitutional as applied to plaintiffs, Los Angeles Lincoln Place Investors, Ltd. (Lincoln)

---

[1]All further *statutory references are to the* Los Angeles Municipal Code unless otherwise indicated.

and Elkgrove Investors, Ltd. (Elk). The trial court found that the ordinance was preempted by Government Code section 7060 et seq. (commonly known as the Ellis Act) and ordered the city to issue a demolition permit to plaintiffs pursuant to Code of Civil Procedure section 1085. Plaintiffs cross-appeal from that portion of the judgment which concludes the ordinance is unconstitutional as applied to them. Plaintiffs seek a clarification declaring the ordinance invalid as to any owner seeking to withdraw accommodations within the meaning of the Ellis Act. In the published portion of this opinion, we address the issue of whether the Ellis Act prohibited the city from imposing the disputed conditions on the issuance of a demolition permit. We affirm.

## II. BACKGROUND

The mandate petition, which was filed on October 19, 1995, sought: a declaration that former section 91.0303(a)5, was invalid; an injunction prohibiting the city from enforcing former section 91.0303(a)5; and a writ of mandate compelling the city to issue a demolition permit to plaintiffs for a two-story, seventeen-unit apartment building, a laundry room and two detached garages, on lot 7 of tract 15124, commonly known as 960 Elkland Place. The petition alleged Lincoln was the beneficial owner of the property while Elk held the legal title. Plaintiffs sought to exercise their rights to demolish the building pursuant to Government Code section 7060 et seq., commonly known as the Ellis Act. Acting through their demolition contractor, Sovereign Contractor, Inc., plaintiffs attempted to obtain a permit to demolish the building beginning in August 1995. Sovereign filed and sought to process a standard demolition permit application with the city's department of building and safety (department). Former section 91.0303(a) provides the department shall issue a demolition permit once it has determined the plans are in conformity with relevant city codes and ordinances. Plaintiffs complied or offered to comply with the codes and ordinances. The department refused to further process the permit based on former section 91.0303(a)5. That provision of law provides that a demolition permit shall be withheld until any plans to construct a condominium, stock cooperative or community apartment project are approved by the city. Also, former section 91.0303(a)5.B provided a demolition permit could be withheld if the owner waived "the right to construct on the subject lot, a condominium, stock cooperative or community apartment project for a period of ten years from the date of the demolition. . . ." The city answered the petition and asserted a number of affirmative defenses including plaintiffs' alleged failure to exhaust administrative remedies.

Plaintiffs filed a motion for judgment on the pleadings on the claims for declaratory relief and writ of mandate on December 20, 1995. They asserted

former section 91.0303(a)5 was unlawful and invalid because it conflicted with the Ellis Act. The city opposed the motion on the following grounds: Plaintiffs failed to exhaust their administrative remedies in that they could have but did not seek a "slight modification" and obtained a waiver or alternation of the requirements pursuant to section 98.0403.1(a)(10); the Ellis Act did not preempt enforcement of section former 91.0303(a)5 because pursuant to Government Code section 7060.7, subdivision (1) the act did not intend to "[i]nterfere with local government authority over land use, including regulation of the conversion of existing housing to condominiums or other subdivided interests"; former section 91.0303(a)5 did not impose substantive barriers to a landowner's right to go out of business but only constituted a procedural requirement; former section 91.0303(a)5 related to the future uses of the property on which the demolition was sought as a factor in maintaining the consistency of the city's general plan as mandated by Government Code section 66474.61; and the Ellis Act was inapplicable to this case pursuant to Government Code section 7060.7, subdivision (3) because plaintiffs were only seeking to withdraw 17 of 795 residential units which was fewer than all accommodations from the housing market.

After taking the matter under submission, the trial court granted the writ of mandate and declared that former section 91.0303(a)5 was invalid as applied to plaintiffs' demolition permit applications in that it conflicted with the Ellis Act. The trial court concluded the ordinance improperly sought to restrain plaintiffs from obtaining demolition permits by requiring future land use approvals and by imposing penalties for the lack of such approval. The trial court further determined that plaintiffs had exhausted their administrative remedies. The trial court ordered the city to issue the demolition permits. The trial court entered judgment on April 4, 1996. The city filed a timely appeal. Plaintiffs filed a timely cross-appeal from that portion of the judgment declaring the ordinance unconstitutional as applied to them seeking clarification that the ordinance was invalid on its face.

### III. DISCUSSION

#### A. *The Standard of Review*

The city argues the trial judge erred in declaring former section 91.0303(a)5 unconstitutional and issuing a writ of mandate compelling the city to issue the demolition permits pursuant to Code of Civil Procedure section 1085. ▓▓ The Supreme Court has held: "Generally, a writ will lie when there is no plain, speedy, and adequate alternative remedy; the respondent has a duty to perform; and the petitioner has a clear and beneficial right

to performance. [Citations.]" (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565].) ■ When there is review of an administrative decision pursuant to Code of Civil Procedure section 1085, courts apply the following standard of review: " ' "[J]udicial review is limited to an examination of the proceedings before the [agency] to determine whether [its] action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether [it] has failed to follow the procedure and give the notices required by law." ' [Citations.]" (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; accord, *California Hotel & Motel Assn.* v. *Industrial Welfare Com.* (1979) 25 Cal.3d 200, 212 [157 Cal.Rptr. 840, 599 P.2d 31].) ■ Because the present case involves the interpretation of a statute, we engage in de novo review of the trial court's determination to issue the writ of mandate. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; e.g., *Riveros* v. *City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1349-1350 [49 Cal.Rptr.2d 238]; *Jefferson* v. *Compton Unified School Dist.* (1993) 14 Cal.App.4th 32, 37-38 [17 Cal.Rptr.2d 474].)

## B. *The Preemption of the Ordinance*

■ The city does not argue that plaintiffs were not qualified to receive the demolition permit. Rather, the city contends the trial court erroneously concluded it was required to issue the demolition permit because former section 91.0303(a)5. was preempted by the Ellis Act. ■ Article XI, section 7 of the California Constitution provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Where a local ordinance or regulation conflicts with general laws, the municipal law is void. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 747 [29 Cal.Rptr.2d 804, 872 P.2d 143]; accord, *Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534]; *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290 [219 Cal.Rptr. 467, 707 P.2d 840].) A conflict exists where the local legislation " 'duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations].' " (*People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484 [204 Cal.Rptr. 897, 683 P.2d 1150].) The Supreme Court has held: "Local legislation is 'duplicative' of general law when it is coextensive therewith. [Citation.] [¶] Similarly, local legislation is 'contradictory' to general law when it is inimical thereto. [Citation.] [¶] Finally, local legislation enters an

area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality [citations]." (*Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th at pp. 897-898; see, e.g., *IT Corp.* v. *Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 85-102 [2 Cal.Rptr.2d 513, 820 P.2d 1023] [no preemption of long-standing local authority to regulate hazardous waste storage]; *Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 426 [261 Cal.Rptr. 384, 777 P.2d 157] [Tanner Act (Health & Saf. Code, §§ 39650-39674) does not prohibit local air pollution districts from interim regulation of nonvehicular emissions until action by the State Air Resources Board]; *Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at pp. 290-302 [San Francisco's ordinances regulating escort services not preempted by statewide laws regulating sexual conduct]; *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 881-888 [218 Cal.Rptr. 303, 705 P.2d 876] [no preemption of right of local school districts to impose school impact fees to finance specified temporary facilities]; *People* ex rel. *Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at pp. 484-488 [no preemption of local regulations concerning pesticide use]; *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 808-810 [100 Cal.Rptr. 609, 494 P.2d 681] [local massage ordinance preempted by statewide regulation of criminal sexual activity]; *In re Hubbard* (1964) 62 Cal.2d 119, 122-128 [41 Cal.Rptr. 393, 396 P.2d 809], disapproved on another point in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63, fn. 6 [81 Cal.Rptr. 465, 460 P.2d 137] [statewide laws concerning " ' "games of chance" ' " did not preempt City of Long Beach prohibition against panguingui].)

Here, the city claims the Ellis Act did not preempt former section 91.0303(a)5. as applied to plaintiffs. In 1985, the Legislature enacted the Ellis Act in response to the Supreme Court's decision of *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97, 102-109 [207 Cal.Rptr. 285, 688 P.2d 894]. In *Nash,* the Supreme Court upheld a constitutional challenge to a local rent control ordinance brought by a landlord who sought to evict his tenants

and demolish the building instead of waiting until they vacated it. Government Code section 7060.7[2] specifically states: "It is the intent of the Legislature in enacting this chapter to supersede any holding or portion of any holding in Nash v. City of Santa Monica, 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894] to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business. . . ."

Government Code section 7060 provides in part: "(a) No public entity, as defined in Section 811.2, shall, by statute, ordinance, or regulation, or by administrative action implementing any statute, ordinance or regulation, compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." Our colleagues in Division Seven of this appellate district stated in *City of Santa Monica* v. *Yarmark* (1988) 203 Cal.App.3d 153, 165 [249 Cal.Rptr. 732]: "The legislative history of the Act consistently demonstrates the purpose of the Act is to allow landlords who comply with its terms to go out of the residential rental business by evicting their tenants and withdrawing all units from the market, even if the landlords could make a fair return, the property is habitable, and the landlords lack approval for future use of the land. In addition to the statement of legislative intent contained in the Act (Gov. Code, § 7060.7), the various legislative committee reports concerning the Act indicate the Act was intended to overrule the *Nash* decision so as to permit landlords the unfettered right to remove all residential rental units from the market, consistent of course, with guidelines as set forth in the Act and adopted by local governments in accordance thereto. (See Sen. Com. on Judiciary (1985-1986) Analysis of Sen. Bill No. 505, Local Controls Residential Real Property, p. 2 ['The purpose of this bill is to overturn *Nash* and to provide landlords the unfettered right to remove rental units from the

---

[2]Government Code section 7060.7 provides in its entirety: "It is the intent of the Legislature in enacting this chapter to supersede any holding or portion of any holding in Nash v. City of Santa Monica, 37 Cal.3d 97 to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business. However this act is not otherwise intended to do any of the following: [¶] (1) Interfere with local governmental authority over land use, including regulation of the conversion of existing housing to condominiums or other subdivided interests. [¶] (2) Override procedural protections designed to prevent abuse of the right to evict tenants. [¶] (3) Permit an owner to withdraw from rent or lease less than all of the accommodations, as defined by paragraph (1) or (2) of subdivision (b) of Section 7060. [¶] (4) Grant to any public entity any power which it does not possess independent of this chapter to control or establish a system of control on the price at which accommodations may be offered for rent or lease, or to diminish any such power which that public entity may possess, except as specifically provided in this chapter. [¶] (5) Alter in any way either Section 65863.7 relating to the withdrawal of accommodations which comprise a mobilehome park from rent or lease or subdivision (f) of Section 798.56 of the Civil Code relating to a change of use of a mobilehome park."

marketplace']; Sen. Rules Com. Analysis of Sen. Bill No. 505 (Sept. 12, 1985) p. 3 ['This bill would preempt any local ordinance that prohibits landlords from removing a rental unit from the marketplace']; Assem. Com. on Judiciary Hg. Rep. on Sen. Bill 505 (Aug. 20, 1985) p. 3 ['This bill would preempt any local ordinance that prohibits landlords from removing a rental unit from the marketplace']; Assem. Off. of Research, Conf. Com. Rep. on Sen. Bill No. 505 (Sept. 10, 1985) p. 4 ['This bill would preempt any local ordinance that prohibits landlords from removing a rental unit from the marketplace'].)" Thus, the Ellis Act was clearly meant to preempt any local ordinance that prohibited a landlord from removing its rental units from the marketplace. (Gov. Code, § 7060.7; *Javidzad* v. *City of Santa Monica* (1988) 204 Cal.App.3d 524, 530 [251 Cal.Rptr. 350]; *City of Santa Monica* v. *Yarmark, supra,* 203 Cal.App.3d at p. 165; accord, *Channing Properties* v. *City of Berkeley* (1992) 11 Cal.App.4th 88, 94 [14 Cal.Rptr.2d 32].)

Former section 91.0303(a)5 provides in part: "The Department shall have the authority to withhold a demolition or relocation permit for a residential building composed of two or more residential rental units, under the following circumstances: [¶] A. When the applicant states that the purpose for demolition or relocation is to construct a condominium, stock cooperative or community apartment project, permits shall be withheld until all necessary tentative tract or preliminary parcel maps for such new subdivision have been approved by the City. [¶] B. When the applicant states that the demolition or relocation is not for the purpose of constructing a condominium, stock cooperative or community apartment project, permits shall be withheld until the Department receives a sworn affidavit from the real property owner, which has been recorded by the County Recorder, stating that said owner waives the right to construct on the subject lot, a condominium, stock cooperative or community apartment project for a period of ten years from the date of the demolition or relocation, and that such waiver will bind any purchaser, encumbrancer, assignee, devisee and transferee of said property during said ten-year period. [¶] C. This Exception 5 shall not apply if the building is to be demolished and is: [¶] (i) Constructed of unreinforced masonry construction and was built pursuant to a building permit issued prior to October 1, 1933, or [¶] (ii) To be demolished pursuant to a demolition order issued by the Department under authority set forth in Division 89 of Article 1 of Chapter IX of the Los Angeles Municipal Code. [¶] D. This Exception 5 shall not apply if the applicant demonstrates to the satisfaction of the Department that the site will be developed with housing for low-to-moderate income households, which housing is be developed, constructed or acquired with federal, state or local government financial assistance. [¶] E. This Exception 5 shall not apply to two-family dwellings or

to apartment houses and apartment hotels containing three dwelling units, provided that at least one dwelling unit in each such building is occupied by a record owner of the property."

The city claims its ordinance is not preempted because it does not provide a substantive barrier to a landlord's right to go out of the rental business but only imposes a procedural requirement that must be met before the application to demolish is granted. According to the city, the ordinance is permissible because: (1) restricting the right to obtain a demolition permit for a dwelling does not necessarily limit the rights of the owner under the Ellis Act; (2) the ordinance only looks toward future use of the property which is permitted by Government Code section 7060.7, subdivision (1); (3) the ordinance is connected to the granting or denial of subdivisions as permitted by Government Code section 7060.1, subdivision (b); and (4) the Ellis Act was not intended to protect plaintiffs who are seeking to demolish only one 17-unit lot of a 795-unit complex.

Most of the issues raised by the city in this case were considered and rejected by Division Three of this appellate district in the decision of *Javidzad* v. *City of Santa Monica, supra,* 204 Cal.App.3d at pages 529-531. In *Javidzad,* our colleagues of Division Three invalidated a Santa Monica rent control ordinance which conditioned the issuance of a demolition permit on: the landowner securing a removal permit; the permit required as a prerequisite a showing the landowner could not make a fair return on the rental units; in the alternative, the landowner could demonstrate the property was uninhabitable; and finally as an additional alternative, the landowner could promise to develop new units subject to rent control. Our Division Three colleagues concluded the ordinance conflicted with the Ellis Act because it conditioned the landowner's right to go out of business on compliance with requirements which were not found in Government Code section 7060 et seq. (204 Cal.App.3d at p. 530.) The court rejected the City of Santa Monica's claim the ordinance was consistent with the Ellis Act because it was merely a land use regulation which authorized the permanent demolition, conversion, or alteration of the units. (*Ibid.*) *Javidzad* explained the contention was unpersuasive because the ordinance did not purport to regulate the subsequent use of the property following its withdrawal from the rental market. (*Ibid.*) Instead, the ordinance directly conflicted with the Ellis Act because the ordinance prescribed standards governing the approval of a removal permit in the first instance which infringed on the landowner's right to go out of the rental housing business. (*Ibid.*) *Javidzad* also rejected as "an absurdity" the claim that the Ellis Act was intended to do nothing more than protect the landowner's right to go out of business by ejecting

tenants and did not intend to encompass ordinances which deny a removal permit which have the effect of precluding redevelopment of the property. (*Id.* at pp. 530-531.) Our colleagues concluded, "Denying . . . a removal permit to a landlord who has gone out of the rental housing business imposes a prohibitive price on the exercise of the right under the Act." (*Id.* at p. 531.)

In this case, the city's ordinance, as applied, restricted plaintiffs' right to demolish their building by refusing to issue a permit unless they agreed to sign a covenant to restrict the use of the land not only for themselves but for "any purchaser, encumbrancer, assignee, devisee and transferee" for a period of 10 years after the date of demolition. (Former § 91.0303(a)5.B.) Also, the city's ordinance exempted the restriction on issuing the demolition permit if the plaintiff intended to use the property to develop low income housing. (Former § 91.0303(a)5.D.) Thus, the ordinance in this case, like the one in *Javidzad*, violated the provisions of Government Code section 7060 et seq. because it impermissibly infringed on the owner's right to simply go out of the rental business in the first instance by refusing to issue a demolition permit based on conditions which are not a part of the Ellis Act. (Gov. Code, §§ 7060, subd. (a), 7060.7.) The practical effect of the ordinance is that the plaintiffs will be compelled to remain in the rental business at that location. Rather than simply allowing them to go out of the rental business the city is attempting to impose "a prohibitive price on the exercise of the right" under the Ellis Act. (*Javidzad* v. *City of Santa Monica, supra,* 204 Cal.App.3d at p. 531.)

We also are not persuaded by the city's argument its ordinance is simply a means to regulate the future use of the property so that it complies with the city's general plan which is permitted by Government Code sections 7060.7, subdivision (1) and 7060.1, subdivision (b). Government Code section 7060.7, subdivision (1) provides the Ellis Act is not meant to "[i]nterfere with local governmental authority over land use, including regulation of the conversion of existing housing to condominiums or other subdivided interests." Government Code section 7060.1, subdivision (b) provides that, except as provided in section 7060.2, the Ellis Act is not meant to diminish or enhance "any power which currently exists or which may hereafter exist in any public entity to grant or deny any entitlement to the use of real property, including, but not limited to, planning, zoning, and subdivision map approvals." As noted above, because the ordinance conditions the issuance of the demolition permit in the first instance on conditions which are not contained in the Ellis Act, we are required to reject the city's arguments in this regard. Moreover, we cannot construe this ordinance as simply a means by which the city is exercising its power to determine whether a future use of the

property will conflict with its general plan because the ordinance also impermissibly prevents the plaintiffs from exercising their right to simply go out of the rental business. The Court of Appeal has held: "What [a landlord] proposes to do with his [or her] property once he [or she] has gone out of the business of offering residential rental units has no bearing . . . in determining [the landlord's] right to decide to go out of that business and to invoke the protection extended [the landlord] for this purpose by the Ellis Act. [Citations.] The City retains an amplitude of powers, which are expressly recognized in the Ellis Act . . . , that may be relevant insofar as the City may see fit 'to regulate the *subsequent* use of the property following its removal from the rental market.' [Citation.]" (*Bullock* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1102 [271 Cal.Rptr. 44], original italics.)

██ We also reject the city's theory that plaintiffs are not entitled to the protection of the Ellis Act because they are not seeking to remove all 795 units of the complex based upon Government Code section 7060.7, subdivision (3). Section 7060.7, subdivision (3) states the Ellis Act does not: "Permit an owner to withdraw from rent or lease less than all of the accommodations, as defined by paragraph (1) or (2) of subdivision (b) of Section 7060." According to the city, in order for the Ellis Act to protect plaintiffs they would have to seek to demolish all 795 units of the complex. We decline to interpret the statutes to require the plaintiffs to demolish the entire 795-unit complex in order to exercise their right to go out of business with respect to the 17-unit structure under the Ellis Act.

First, Government Code section 7060, subdivision (b) defines accommodations as: "(1) The residential rental units in any detached physical structure containing four or more residential rental units. [¶] (2) With respect to a detached physical structure containing three or fewer residential rental units, the residential rental units in that structure and in any other structure located on the same parcel of land, including any detached physical structure specified in paragraph (1)." Thus, a 17-unit structure on lot 7 of tract 15124 is an accommodation within the meaning section 7060, subdivision (b)(1) which entitles plaintiffs to exercise their rights under the Ellis Act. Second, in interpreting statutes a court is required to "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People* v. *Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]; *People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].) Adopting the city's interpretation that in order for plaintiffs to obtain the

benefits of the Ellis Act, they would have to demolish all 795 units would be an absurd consequence which the Legislature could not have intended. As noted above, the purpose of the statute was to preempt local regulations which prohibited landlords from removing rental units from the marketplace. (Gov. Code, § 7060.7; *Javidzad* v. *City of Santa Monica, supra*, 204 Cal.App.3d at p. 530; *City of Santa Monica* v. *Yarmark, supra*, 203 Cal.App.3d at p. 165.) The Ellis Act was not meant to require a landlord to completely exit the rental business in order to exercise the right to remove the rental units from the market. The city, despite the opportunity to do so, has been unable to cite to any evidence of such an unusual and unlikely intention on the part of the Legislature.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

IV.   DISPOSITION

The judgment is affirmed. Plaintiffs, Los Angeles Lincoln Place Investors, Ltd., and Elkgrove Investors, Ltd., shall recover their costs incurred on appeal from defendant, City of Los Angeles.

Armstrong, J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied April 22, 1997, and the petition of defendants and appellants for review by the Supreme Court was denied July 9, 1997.

---

*See footnote, *ante,* page 53.