**S.D. MYERS, INC., Plaintiff–Appellant,**

**v.**

**CITY AND COUNTY OF SAN FRANCISCO; San Francisco Human Rights Commission, Defendants–Appellees.**

**No. 02–16480.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 2003.

Filed July 29, 2003.

---

Robert H. Tyler, California Advocates for Faith and Freedom, Temecula, CA, for the plaintiff-appellant.

Dennis Aftergut, Of Counsel, Therese M. Stewart, Chief Deputy, City Attorney, San Francisco, CA, for the defendants-appellees.

Before GOODWIN, TASHIMA, and WARDLAW, Circuit Judges.

## OPINION

GOODWIN, Senior Circuit Judge.

S.D. Myers, Inc. again challenges San Francisco's Nondiscrimination in Contracts Ordinance (the "Ordinance"), S.F. Admin. Code Ch. 12B, a measure that requires all city contractors to provide equal benefits to their employees, regardless of marital or domestic partner status. This is not the first time Myers has asked us to strike down the Ordinance. In *S.D. Myers, Inc. v. City & County of San Francisco,* 253 F.3d 461 (9th Cir.2001) *(Myers I),* we upheld the Ordinance as consistent with state law, federal law, and the U.S. Constitution. We once again uphold the Ordinance, this time against a challenge of preemption by California Family Code §§ 297–299.6 (the "Registration Statute"), a recently-enacted state statute that governs the creation and registration of domestic partnerships.

### I. Background

*Myers I* details the relevant facts and we recite them only as necessary to understand the nature of this appeal. In 1997, Myers, an Ohio-based corporation, submitted the lowest bid to service electrical transformers owned by the City of San Francisco (the "City") but located outside of city boundaries in Northern California. *See Myers I,* 253 F.3d at 465. To secure the service contract, the City required Myers to certify its willingness to comply with the Ordinance. *See id.* at 466. Myers refused to comply because the Ordinance was contrary to the company's "religious and moral principles." *Id.* As a result, the City rejected Myers's bid.

### II. Analysis

We are called to decide whether the Registration Statute conflicts with, and therefore preempts, the Ordinance. According to the California Constitution, "[a]

county or city may make or enforce within its limits all local, police, sanitary, and other ordinance and regulations not in conflict with general laws." Cal. Const. art. XI, § 7. "A conflict exists [only] if the local legislation [1] duplicates, [2] contradicts, or [3] enters an area fully occupied by general law, either expressly or by legislative implication." *Sherwin–Williams Co. v. City of Los Angeles,* 4 Cal.4th 893, 897, 16 Cal.Rptr.2d 215, 844 P.2d 534 (1993) (internal quotation marks omitted).

In performing this analysis, we are mindful of California's policy against preemption: "To the extent difficult choices between competing claims of municipal and state governments can be forestalled in this sensitive area of constitutional law, they ought to be; courts can avoid making such unnecessary choices by carefully insuring that the purported conflict is in fact a genuine one, unresolvable short of choosing between one enactment and the other." *Cal. Fed. Sav. & Loan Ass'n v. City of Los Angeles,* 54 Cal.3d 1, 16–17, 283 Cal.Rptr. 569, 812 P.2d 916 (1991).

### A. Does the ordinance duplicate state law?

"Local legislation is duplicative of general law when it is coextensive therewith." *Sherwin–Williams Co.,* 4 Cal.4th at 897–98, 16 Cal.Rptr.2d 215, 844 P.2d 534 (internal quotation marks omitted); *see also Cohen v. Bd. of Supervisors,* 40 Cal.3d 277, 292, 219 Cal.Rptr. 467, 707 P.2d 840 (1985) (local ordinance prohibited escorts from engaging in any and all criminal conduct; court found preemption because the ordinance was coextensive with state criminal law). While the Ordinance and Registration Statute both concern domestic partnerships, they regulate entirely distinct matters.

The Ordinance is San Francisco's "concrete" attempt at abiding by its pledge "not to do business with entities that dis-

criminate on the basis of sexual orientation." *Myers I,* 253 F.3d at 465. The Ordinance provides:

> All contracting agencies of the City ... shall include in all contracts and property contracts ... a provision obligating the contractor not to discriminate on the basis of the fact or perception of a person's race, color, creed, religion, national origin, ancestry, age, sex, sexual orientation, gender identity, *domestic partner status,* marital status, disability, or Acquired Immune Deficiency Syndrome or HIV status (AIDS/ HIV status) ... against any employee of ... such contractor and shall require such contractor to include a similar provision in all subcontracts executed or amended thereunder.

S.F. Admin. Code, § 12B.1(a) (emphasis added). It further provides:

> No contracting agency of the City ... shall execute or amend any contract or property contract with any contractor that discriminates in the provision of bereavement leave, family medical leave, health benefits, membership or membership discounts, moving expenses, pension and retirement benefits or travel benefits as well as any benefits other than bereavement leave, family medical leave, health benefits, membership or membership discounts, moving expenses, pension and retirement benefits or travel benefits between employees with domestic partners and employees with spouses, and/or between the domestic partners and spouses of such employees, where the domestic partnership has been registered with a governmental entity pursuant to State or local law authorizing such registration. . . .

*Id.* § 12B.1(b).

As these two subsections illustrate, the Ordinance is an anti-discrimination measure the City imposes on all entities that

choose to contract with it. Under the Ordinance, if an entity receives the benefit of contracting with the City, it must refrain from discrimination along a number of axes, including domestic partner status, when providing benefits to employees and their spouses/partners.

The Registration Statute, on the other hand, governs the creation and registration of domestic partnerships by imposing detailed requirements and procedures that two individuals must follow before obtaining recognition of their union by the State of California. For example, it requires that both individuals entering into a domestic partnership: "have a common residence," "agree to be jointly responsible for each other's basic living expenses incurred during the domestic partnership," "not [be] related by blood in a way that would prevent them from being married to each other in this state," "are at least 18 years of age," and are either "members of the same sex" or "over the age of 62." Cal. Fam.Code § 297. It also describes the fees and processing materials necessary to file a notice of domestic partnership with the state, see id. § 298, and the conditions under which a domestic partnership ceases to exist, see id. § 299. The Registration Statute neither addresses discrimination on the basis of domestic partner status, nor regulates the provision of benefits to the domestic partners of employees. Furthermore, it does not impose any additional obligations on an employer once an employee registers a domestic partnership.[1] See also Senate Judiciary Comm. Rep., AB26, Reg. Sess. (Cal.1999) ("This bill would define a domestic partnership and provide for its registration and termination in the state.").

As the district court correctly recognized, the two measures regulate distinct subject matters and therefore are not duplicative.

**B. Does the ordinance contradict state law?**

"[L]ocal legislation is contradictory to general law when it is inimical thereto." Sherwin–Williams, 4 Cal.4th at 898, 16 Cal.Rptr.2d 215, 844 P.2d 534 (citing In re Portnoy, 21 Cal.2d 237, 240, 131 P.2d 1 (1942) (finding contradiction where local legislation established a lower maximum speed limit for motor vehicles as compared to the higher speed limit fixed by state law)). The Ordinance does not expressly contradict any provision of the Statute. It is an anti-discrimination measure directed at contractors seeking business from the City whereas the Registration Statute is a set of requirements and procedures directed at individuals seeking official recognition of their domestic partnership. The measures regulate wholly distinct subject matters and do not contradict each other.

**C. Does the Ordinance enter an area fully occupied by state law, either expressly or impliedly?**

Even if the Ordinance does not duplicate or contradict the Statute, it is still invalid if it "enters an area that is fully occupied by general law when the Legislature has expressly manifested its intent to fully occupy the area, or when it has impliedly done so." Id., 4 Cal.4th at 898, 16

---

1. The statute does provide that a "third party who suffers a loss as a result of failure by the domestic partner to send[a notice of partnership termination] shall be entitled to seek recovery from the partner who was obligated to send it for any actual loss resulting thereby." Cal. Fam.Code § 299(4)(c). This, however, is not an obligation on the employer to provide any additional benefit. Rather it creates a duty on the individual who has benefitted from his/her membership in a domestic partnership to notify third parties when that partnership ceases to exist.

Cal.Rptr.2d 215, 844 P.2d 534 (internal citations and quotation marks omitted). Myers contends that the California Legislature has expressly *and* impliedly manifested its intent to occupy fully the area of domestic partnership regulation.

 In assessing Myers's argument, the following rules of California statutory construction apply: "Of primary importance 'the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" *San Diego Union v. City Council,* 146 Cal.App.3d 947, 953–954, 196 Cal.Rptr. 45 (1983) (quoting *Select Base Materials, Inc. v. Bd. of Equalization,* 51 Cal.2d 640, 645, 335 P.2d 672 (1959)). "The provision under scrutiny must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which, upon application, will result in wise policy rather than mischief or absurdity." *Id.* at 954, 196 Cal.Rptr. 45 (citations omitted). "The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." *Id.* (quoting *Cossack v. City of Los Angeles,* 11 Cal.3d 726, 733, 114 Cal.Rptr. 460, 523 P.2d 260 (1974)).

### 1. Express Full Occupation

The Registration Statute provides:

Any local jurisdiction may retain or adopt ordinances, policies, or laws that offer rights within that jurisdiction to domestic partners as defined by Section 297 or as more broadly defined by the local jurisdiction's ordinances, policies, or laws, or that impose duties upon third parties regarding domestic partners as defined by Section 297 or as more broadly defined by the local jurisdiction's ordinances, policies, or laws, that

are in addition to the rights and duties set out in this division....

Cal. Fam.Code § 299.6(c).

 This provision, according to Myers, represents an express Legislative intent to occupy fully the area of domestic partnership regulation in California. Under this interpretation, § 299.6(c) allows a municipality to offer domestic partnership rights and impose duties on third parties *only* within the municipality's boundaries. Any domestic partnership ordinance that regulates outside of local boundaries is subject to preemption by the Registration Statute. The City, on the other hand, argues that § 299.6(c) allows a municipality to offer rights within its boundaries and to impose duties on third parties within *and* outside of its boundaries. In short, the parties ask us to choose between one of two interpretations of § 299.6(c).

We agree with the City's interpretation of the statute for two reasons. First, in *Myers I,* we specifically held that the Ordinance is not an unconstitutional attempt at extraterritorial regulation. *See Myers I,* 253 F.3d at 474 ("[U]nder California law, the Ordinance is an exercise of the City's contracting power.") Thus, "the City is not acting extraterritorially when it uses that power in conjunction with its proprietary power over City property." *Id.; see also Air Cal, Inc. v. City & County of San Francisco,* 865 F.2d 1112, 1117 (9th Cir. 1989) (a city may exercise proprietary powers with respect to property it owns even if that property lies outside the city's corporate boundaries).

Second, a review of the limited legislative history does not reveal support for Myers's position. Myers has provided no compelling evidence to show that the Legislature intended to occupy fully the entire arena of domestic partnership regulation. Nor does the legislative history suggest that the Legislature intended to preempt

any local ordinance that reached outside of local boundaries. The legislative history provides little relevant guidance and we decline to take the drastic step of striking down the Ordinance.

### 2. Implied Full Occupation

 Even if the Legislature has not manifested an express intention to occupy fully all matters relating to domestic partnerships, we still must consider whether it has done so implicitly. The California Supreme Court has identified several "indicia of intent" to determine whether the Legislature has fully occupied a particular area of regulation by implication, including:

(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern;

(2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action;

*Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles,* 54 Cal.App.4th 53, 59–60, 62 Cal.Rptr.2d 600 (1997) (quoting *Sherwin–Williams Co.,* 4 Cal.4th at 897–98, 16 Cal.Rptr.2d 215, 844 P.2d 534).[2]

 Neither indicia is present in this case. A municipality's ability to contract exclusively with businesses that do not discriminate on the basis of domestic partner status has not been "fully," "completely," or even "partially" covered by state law. The Legislature has been silent on the subject of municipal contracting choices in this context; and Myers does not cite to any statute that covers the area. Further, an overall reading of §§ 297–299.6 does not reveal legislative intent for the statute to serve as anything beyond a set of requirements and procedures for establishing domestic partnerships officially recognized by the State of California. The Registration Statute is carefully worded to describe the requirements for a domestic partnership, the processes involved in filing a domestic partnership notice, and the procedures for terminating a domestic partnership. It is difficult to see in this case which of these "terms indicate clearly that a paramount state concern will not tolerate further or additional local action." *Los Angeles Lincoln Place Investors, Ltd.,* 54 Cal.App.4th at 59–60, 62 Cal.Rptr.2d 600.

### III. Conclusion

We hold that Cal. Fam.Code §§ 297–299.6 and S.F. Admin. Code Chap. 12B do not conflict and therefore, the former does not preempt the latter. Because we uphold the validity of the Ordinance on this ground, we need not reach the issue of whether it regulates a purely municipal affair.

AFFIRMED.

---

**2.** A third indicium of intent is that "the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit of the locality." *Los Angeles Lincoln Place Investors,* 54 Cal.App.4th at 60, 62 Cal.Rptr.2d 600. Since the facts of this case do not implicate the interest of transient citizens, *no further analysis is necessary* on this point.