Filed 3/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| **MARTIN J. COYNE et al.,**<br><br>     **Plaintiffs and Respondents,**<br><br>**v.**<br><br>**CITY AND COUNTY OF SAN FRANCISCO,**<br><br>     **Defendant and Appellant.** | **A145044,**<br>**A146569**<br><br>**(San Francisco County**<br>**Super. Ct. Nos. CGC-14-540709,**<br> **CPF-15-514382)** |

In this consolidated appeal, we consider limits on mitigation measures a municipality may impose on landlords under the Ellis Act, when a landlord seeks to remove residential property from the rental market. The City and County of San Francisco (the City) appeals two superior court judgments invalidating City-enacted ordinances increasing the relocation assistance payments property owners owe their tenants under the Ellis Act. (Gov. Code, § 7060 et seq.) The superior court found both ordinances facially preempted by the Act. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Ellis Act*

The Ellis Act prohibits a city or county from "compel[ling] the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease . . . ." (Gov. Code, § 7060, subd. (a).)

Enacted in 1985, the statute was a legislative response to the California Supreme Court decision in *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97 (*Nash*). In *Nash*, a landlord "disenchanted . . . with operating rental housing" wanted to evict his tenants

1

from the rent-controlled apartment building he owned in order to demolish the building and keep the land as an investment. (*Id.* at p. 101.) However, a city ordinance prohibited the landlord from evicting his tenants and removing his rental units from the housing market without the proper city-issued removal permit. (*Id.* at p. 99.) To secure the permit, the landlord had to show he could no longer earn a reasonable return on his investment. (*Id.* at p. 101.) Knowing he could not make the required showing for the permit, the landlord petitioned for a writ of mandate. (*Ibid.*) The California Supreme Court denied the writ, concluding the ordinance was reasonably related to the city's legitimate goal of maintaining adequate rental housing. (*Id.* at p. 109.)

The Ellis Act's expressed purpose was to supersede *Nash*, to the extent *Nash* conflicts with the Act, in order to permit a residential landlord "to go out of business." (Gov. Code, §§ 7060.7, 7060, subd. (a).) However, while establishing an owner's right to exit the residential rental business, the Act did nothing to "[d]iminish[] or enhance[] any power in any public entity to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations." (Gov. Code, § 7060.1, subd. (c).)

*San Francisco Ordinances*

Since the Ellis Act's adoption, the City has passed various ordinances setting forth requirements rental property owners must satisfy to withdraw units from the rental market.

Most relevant for our purposes are the City-enacted ordinances requiring property owners to make relocation payments to their tenants evicted under the Ellis Act. In 1994, the City enacted ordinance No. 320-94 requiring landlords to provide relocation payments ranging from $1,500 to $2,500 (depending on the size of the unit) to displaced low-income tenants, and $3,000 to displaced elderly and disabled tenants. (S.F. Admin. Code, ch. 37, § 37.9A former subd. (e).) In 2000, the City enacted ordinance No. 5-00, which increased the relocation payment to a standard $4,500 for low-income tenants displaced by Ellis Act withdrawals. (S.F. Admin. Code, ch. 37, § 37.9A, former subd., (f)(1).) In 2005, the City enacted ordinance No. 21-05 ("Ordinance 21-05"), which lifted

2

the restrictions limiting the relocation assistance payments to low-income tenants and extended them to all displaced tenants. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3).) For units with more than three tenants, Ordinance 21-05 set $13,500 as the maximum relocation payment a landlord was required to pay per unit, in addition to the $3,000 add-on for evicted elderly and disabled tenants. (*Id.*, subds. (e)(3)(A), (e)(3)(B), (e)(3)(C).) The ordinance also indexed these payments to annual inflation rates. (*Id.*, subd. (e)(3)(D).) For evictions noticed between March 2015 and February 2016, the time period when two of the individual plaintiffs here invoked the Ellis Act, the inflation-adjusted base relocation payout due per tenant was $5,555.21, up to $16,665.59 per unit, with an additional payment of $3,703.46 to each elderly or disabled evicted tenant.

*Ordinance No. 54-14*

On April 15, 2014, the City enacted ordinance No. 54-14 ("Ordinance 54-14") to "mitigate adverse impacts of tenant evictions" under the Ellis Act. Ordinance 54-14 entitles a tenant evicted under the Ellis Act to an increased relocation payment set as the greater of the existing relocation payment (under the 2005 Ordinance as described above) or the new, enhanced amount: "the difference between the tenant's current rent and the prevailing rent for a comparable apartment in San Francisco over a two year period." (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(E).) The ordinance refers to this enhanced payout as the "Rental Payment Differential." (*Id.*, subd. (e)(3)(E)(ii).) The current market rental rate is to be determined by the City's Controller's Office based on market data reasonably reflecting a representative sample of San Francisco rental apartments. (*Ibid*.) The 2014 Ordinance places no caps on the size of the payout under the Rental Payment Differential and no constraints on the tenant's use of the payout.

Ordinance 54-14 also contains provisions for property owners to seek relief from the San Francisco Residential Rent Stabilization and Arbitration Board ("Rent Board") if the relocation payments would cause them financial hardship. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(G)(i).) As we shall discuss, the remedies include a Rent Board ordered "hardship adjustment" in the form of a "reduction, payment plan, or any other relief [the Rent Board] determine[s] is justified following a hearing" after considering

3

"all relevant factors" including the landlord's income and other assets excluding retirement accounts and non-liquid personal property. (*Id.*, subd. (e)(3)(G)(i–iii).) And landlords can also seek administrative relief from the Rent Board if they believe the Controller's determination of fair market rents does not reasonably reflect the market rents of comparable units in San Francisco. (*Id.*, subd. (e)(3)(H).)

The new law took effect on June 1, 2014. (San Francisco Ordinance No. 54-14, section 2.)

*The Levin and Jacoby Lawsuits Against Ordinance 54-14*

Ordinance 54-14 was challenged in federal court by *Levin v. City and County of San Francisco* (N.D.Cal. 2014, No. 3:14-cv-03352-CRB) (*Levin*) and in state court by *Jacoby v. City and County of San Francisco* (Super. Ct. S.F. City and County, 2014, No. CGC-14-540709) (*Jacoby*), which is part of this consolidated appeal.

In *Levin*, multiple landlords and landlord groups filed suit against the City alleging Ordinance 54-14 on its face was an unconstitutional taking in violation of the Fifth Amendment. (*Levin*, *supra*, 71 F.Supp.3d 1072, 1074.) The federal district court held Ordinance 54-14 worked an uncompensated taking of the plaintiffs' property. (*Id.* at p. 1089.) It described Ordinance 54-14 as a "laudable" attempt to ameliorate San Francisco's housing shortage and high market rates but a "policy shortcut" in which the City sought to " 'forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' [Citation.]" (*Ibid.*) The court enjoined the City from enforcing the 2014 Ordinance and stayed its decision to allow the City to appeal. (*Id.* at pp. 1089–1090.)

In *Jacoby*, property owners Jerrold Jacoby, Martin J. Coyne, Golden Properties LLC, and Howard Weston, and an association of property owners, Small Property Owners of San Francisco Institute (collectively Jacoby), filed a complaint and writ petition and a first amended petition for writ of mandate also challenging Ordinance 54-

4

14.[1]  They argued Ordinance 54-14's payment requirement was facially invalid and preempted by the Ellis Act.  The superior court granted the first amended writ petition.  Taking judicial notice of *Levin*, the court stated it concurred with the decision in the district court case.  Citing the First District's decision in *Pieri v. City and County of San Francisco* (2006) 137 Cal.App.4th 886 (*Pieri*), the superior court concluded the standard for determining the propriety of the amount of a relocation payment is "whether relocation compensation is 'reasonable,' not whether it is 'prohibitive.' "  The court held the payments under Ordinance 54-14 were "not 'reasonable' as they are disproportionately higher than compensation contemplated by the Legislature in enacting and amending Govt. Code 7060" and found the ordinance preempted by the Ellis Act.  The *Jacoby* court also enjoined the City from enforcing the ordinance.  The City appealed the judgment granting the writ petition.

*Ordinance No. 68-15*

Following the *Levin* and *Jacoby* trial court decisions, the City enacted ordinance No. 68-15 ("Ordinance 68-15") to revise the invalidated relocation assistance measure.  This amended ordinance preserves parts of its predecessor but modifies several of its elements.  It makes no change to the requirement that withdrawing landlords pay Ellis-Act-evicted tenants two years' worth of increased housing costs following eviction—the Rental Payment Differential—if that amount is greater than the relocation payment allowed under Ordinance 68-15.  (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(E).)  However, in contrast to Ordinance 54-14, which placed no limit on the Rental Payment Differential, Ordinance 68-15 caps a landlord's payout of any Rental Payment Differential at $50,000.  (*Id.*, subd. (e)(3)(E)(ii).)

Also, whereas Ordinance 54-14 placed no constraints on how an evicted tenant used a relocation assistance payout, Ordinance 68-15 adds a requirement for tenants to submit to their landlords a statement signed under penalty of perjury certifying that the

---

[1]  Shortly after plaintiffs filed their first amended petition, plaintiffs Jerrold Jacoby and Golden Properties LLC dismissed their claims with prejudice.

5

relocation payment will be used solely for "Relocation Costs." (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(E)(iv).)[2] The amended ordinance conditions a tenant's receipt of any relocation payment on submission of this declaration, a sample of which landlords must provide to tenants. (*Ibid*.) In addition, Ordinance 68-15 adds the requirement that displaced tenants document their relocation expenses by keeping receipts and providing them to their former landlords upon request; tenants who fail to do so must reimburse landlords for any payments tenants cannot demonstrate were used for allowable costs. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(E)(v).)

The amended ordinance leaves largely undisturbed provisions of Ordinance 54-14 authorizing landlords to seek hardship adjustments from the Rent Board. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(G).) Nor did it change the ability of landlords to seek administrative relief from the Rent Board if they believe the City's average-rents report does not reflect the market rent for a comparable unit. (*Id.*, subd. (e)(3)(H).)

Ordinance 68-15 took effect on June 14, 2015. (San Francisco Ordinance No. 54-14, section 3.) Although enacted, the ordinance has not been enforced by the City, which has taken the position that the "amendment [set forth in Ordinance 68-15] is covered by the previous injunction issued by the Court in *Levin* . . . and therefore the City is not enforcing the amended ordinance until permitted to do so by the Court."

*The Coyne Lawsuit Against Ordinance 68-15*

In response to Ordinance 68-15, property owners Martin J. Coyne, Howard Weston, Edmund A. Chute, and a non-profit corporation, the Small Property Owners of San Francisco Institute (collectively Coyne), filed a petition for writ of mandate and complaint for declaratory relief on the ground that Ordinance 68-15 deprives them of their Ellis Act right to go out of the residential rental business. Through their writ, they

---

[2]    A newly defined term in the amended ordinance, "Relocation Costs" are "any of the following costs incurred by an evicted tenant: rent payments for a replacement dwelling, the purchase price of a replacement dwelling, any costs incurred in moving to a replacement dwelling, or any costs that the tenant can demonstrate were incurred to mitigate the adverse impacts on the tenant of the eviction." (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(E)(vi)(b).)

sought to stay, rescind, and preclude the City from enforcing Ordinance 68-15. Their declaratory relief complaint sought a range of declarations, including that Ordinance 68-15 is facially invalid and unreasonable, improperly compels property owners to waive their constitutional right of privacy, violates due process, and amounts to a "monetary exaction" or unconstitutional taking.

The superior court in *Coyne* found plaintiffs' facial challenge to be "successfully alleged" and granted the writ. The court held the enhanced relocation assistance amount in the ordinance was not "reasonable" because it "is not directed at the adverse impacts caused by a landlord's decision (i.e. the need to pay first/last months' rent and a security deposit and to incur moving expenses), but is instead *explicitly* implemented to subsidize the payment of rent that a displaced tenant will face on the open market, regardless of income, and it requires this subsidy for two years." Further, the court found the increased amount to "have no relationship to the adverse impact *caused* by a landlord's decision to exit the rental market, and because they call for a more than *300% increase* over the prior lawful relocation assistance scheme." The court also held the Ellis Act preempted procedural elements of Ordinance 68-15 because the ordinance "places several impermissible and unauthorized obstacles before a landlord who seeks to invoke the Ellis Act to exit the rental market." The court enjoined the City from enforcing Ordinance 68-15. The City again appealed the judgment granting the writ petition.

We consolidated the *Jacoby* and *Coyne* appeals pursuant to a joint motion made by the parties.[3] We shall refer to Jacoby and Coyne collectively as "the *Coyne* plaintiffs."

---

[3] While this consolidated appeal was being briefed, both parties filed requests for judicial notice. We deferred ruling on the requests until a decision on the merits of the case. We now rule as follows:

The City's request for judicial notice filed on February 3, 2016 is granted as to the following documents: Document 1 (S.F. Ordinance 54-14); Document 4 (S.F. Ordinance 68-15); and Document 12 (Notice of Appeal of Order in *Levin v. City and County of San Francisco*, U.S. District Court Case No. 3:14-cv-03352 CRB). With respect to Document 11 (Memorandum of Findings of Fact and Conclusions of Law in *Levin v. City and County of San Francisco*, U.S. District Court Case No. 3:14-cv-03352 CRB), we take

7

DISCUSSION

" 'The issue of preemption of a municipal ordinance by state law presents a question of law, subject to de novo review.' " (*Apartment Assn. of Los Angeles. County, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 13, 21.)  And because the present case involves the interpretation of a statute, we engage in de novo review of the trial court's determination to issue the writ of mandate.  (*Pomona Police Officers' Assn. v. City of Pomona* (1997) 58 Cal.App.4th 578, 584.)

I.

*The Ellis Act Preempts the City's Enhanced Relocation Assistance Ordinances*

*A.  General Principles of Preemption*

" 'Under article XI, section 7 of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances

---

judicial notice of the fact that Ordinance 54-14 was challenged and enjoined.  (See *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482 (*Arce*) ["While we may take judicial notice of court records and official acts of state agencies [citation], the truth of matters asserted in such documents is not subject to judicial notice."].)  The City's request for judicial notice is denied as to the remaining documents; we conclude they are not relevant to our analysis.  (See *id.* ["We also may decline to take judicial notice of matters that are not relevant to dispositive issues on appeal."]; *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 (*Mangini*).)

The *Coyne* plaintiffs' request for judicial notice filed on May 20, 2016 is granted as to the following documents:  Document A (S.F. Rent Board—Current Relocation Payments for Ellis Act Evictions Under 2005 Ordinance); Document B (San Francisco Admin. Code, ch. 37, §§ 37.9A, subd. (a)(1)(A), 37.9A, subd. (f)); and Document C (San Francisco Ordinance No. 5-00).  It is denied as to the remaining documents because these documents do not bear on our analysis.  (*Arce*, *supra*, 181 Cal.App.4th at p. 482; *Mangini*, *supra*, 7 Cal.4th at p. 1063.)

The *Coyne* plaintiffs' request for judicial notice filed on August 11, 2016 for Exhibit A (Agreement between the San Francisco Department of Human Services and the Tenderloin Housing Clinic); Exhibit B (online article entitled "*S.F. Boosts Spending to Stop Ellis Evictions*"); and Exhibit C (Order from *PI Coleridge, LLC v. Leticia Morales-Gaitan*, Case No. CUD-15-651146) is denied in total.  None of these documents are relevant to the issues before us.  (*Arce*, *supra*, 181 Cal.App.4th at p. 482; *Mangini*, *supra*, 7 Cal.4th at p. 1063.)

and regulations not in conflict with general [state] laws." [¶] "If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void." [Citations.]' " (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1067.)

" ' "The first step in a preemption analysis is to determine whether the local regulation explicitly conflicts with any provision of state law. [Citation.]" ' " (*Calguns Foundation, Inc. v. County of San Mateo* (2013) 218 Cal.App.4th 661, 666.) " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " '[Citations.]" (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897.)

"Local legislation is 'duplicative' of general law when it is coextensive therewith. [Citation.] [¶] [L]ocal legislation is 'contradictory' to general law when it is inimical thereto. [Citation.] [¶] [L]ocal legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality. [Citations.]" (*Id.* at pp. 897–898.)

"[W]hen local government regulates in an area over which it traditionally has exercised control . . . California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute. [Citation.] The presumption against preemption accords with our more general understanding that 'it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' [Citations.]" (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139,

1149–1150.)  "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption."  (*Id*. at p. 1149.)

In its briefing, the City questions "which of the three kinds of preemption—contradiction preemption, field preemption, or duplication preemption—[the *Coyne* plaintiffs] claim."  The *Coyne* plaintiffs do not appear to argue that Ordinance 68-15 duplicates the Ellis Act, and the City does not address duplication preemption, finding no such claim plausible.  Rather, the *Coyne* plaintiffs assert that preemption takes place when local laws "conflict," "contradict[]," or are "inimical" to state law, suggesting *contradiction* preemption is their core preemption claim.  The City rejects this analysis, arguing neither contradiction preemption nor field preemption invalidates its amended ordinance.  First applying contradiction preemption (or conflict preemption), we consider whether the enhanced relocation assistance payments provisions of the City's ordinances are valid.

## B.  Local Ordinances Cannot Impose a "Prohibitive Price" on a Landlord's Ability to Exit the Residential Rental Business

As a threshold matter, the parties' briefs to this Court debate the appropriate analytical standard for evaluating the validity of the enhanced payment requirements under a contradiction or conflict preemption analysis.  The *Coyne* plaintiffs insist the standard to use to determine whether the enhanced mitigation payment provisions conflict with the Ellis Act is a *reasonableness* standard: They posit, "[W]hen the mitigation payment is 'so disproportionately higher . . . that it is necessarily beyond that contemplated in the Ellis Act,' " it is unreasonable and preempted.  The superior court in both underlying cases adopted the reasonableness standard.  Meanwhile, the City rejects reasonableness as the proper standard for our review, asserting that "[u]nder the contradiction-preemption test, the City is prohibited by the Ellis Act only from enacting a local law that directly or impliedly 'compel[s]' landlords 'to continue to offer[]' units for rent or lease."  Under the City's *compulsion* formulation of the contradiction-preemption test, the proper preemption inquiry is whether the payment obligation impermissibly compels landlords to remain in the residential rental business.

10

Prior to oral argument, we asked the parties to address whether the appropriate analytical standard for evaluating the plaintiffs' preemption claim is "whether they impose a *prohibitive price* on the landlords exercising their rights under the Ellis Act to withdraw from the residential rental business." At oral argument, the City initially argued there should be no doubt that . . . prohibitive price is the standard. The City further explained that "prohibitive price is compulsion," noting that "the City is not allowed to directly compel landlords to remain in the residential rental business. It is not allowed to do the same thing indirectly by exacting a price that is so high that landlords can't in practice pay it or even that will materially deter them from evicting under the Ellis Act." The *Coyne* plaintiffs ultimately agreed, urging this court to adopt the prohibitive price framework applied by our colleagues in *San Francisco Apartment Association*.

We conclude the prohibitive price standard is the appropriate standard to determine conflict preemption under the Ellis Act. It is the measure appellate courts consistently adopt to determine if a challenged ordinance contradicts the state law. (See *Javidzad v. City of Santa Monica* (1988) 204 Cal.App.3d 524, 531 (*Javidzad*) [ordinance requiring landlords to obtain permit to remove units from rental market preempted because criteria for permit "impose[d] a *prohibitive price* on the exercise of the right under the [Ellis] Act" (italics added)]; *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1101 (*Bullock*) [city ordinance requiring owner to replace housing stock or pay in lieu fee in order to convert residential units into hotel units "impose[d] a *prohibitive price* on the exercise of [the right to go out of business] under the [Ellis] Act" (italics added)]; *Channing Properties v. City of Berkeley* (1992) 11 Cal.App.4th 88, 99–100 [city ordinance requiring landlords to pay relocation assistance to all evicted tenants invalid because such payments "might well 'impose[] a *prohibitive price* on the exercise of the right under the [Ellis] Act' " (italics added)]; *Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles* (1997) 54 Cal.App.4th 53, 64 (*Lincoln Place*) [city ordinance prohibiting landlords from demolishing withdrawn rental units absent removal permit that would impose 10-year restriction on property use was an

11

invalid attempt to impose a "*prohibitive price* on the exercise of the right under the [Ellis] Act" (italics added)]; *Johnson v. City and County of San Francisco* (2006) 137 Cal.App.4th 7, 18 (*Johnson*) [ordinance requiring landlords to notify their tenants upon eviction about the relocation payment amount the landlord believes to be due to tenant invalid for placing "*prohibitive price* on a landlord's right to exit the rental market" (italics added)]; see *Pieri*, *supra*, 137 Cal.App.4th at pp. 893–894 [observing "[s]everal cases have established that a public entity may not impose a *prohibitive price* on a landlord's exercise of the right under the Ellis Act to go out of business" (italics added)]; *San Francisco Apartment Assn. v. City and County of San Francisco* (2016) 3 Cal.App.5th 463, 482 (*San Francisco Apartment Assn.*) ["[A] public entity may not impose an inevitable and undue burden (to wit, a '*prohibitive price*') on a landlord's exercise of its right under the Ellis Act to exit the residential rental business." (italics added)].)  Accordingly, we will apply the "prohibitive price" standard as broadly interpreted by the case law to evaluate whether the enhanced payment requirements in the City's ordinances are conflict preempted.

### C. *Payouts Based on the Rental Payment Differential Impose a Prohibitive Price on Landlords Exiting the Residential Rental Business*

Having concluded a local law must survive a "prohibitive price" test to overcome a conflict preemption challenge under the Ellis Act, our analysis focuses on whether the City's newly enacted relocation payment provisions survive that test.  We conclude they do not.

The *Coyne* plaintiffs assert, "There is no case that supports an extension of the City's authority to require prospective rental subsidies under the guise of relocation assistance."  They contend that "in both character and amount" the recently enacted relocation assistance payments are "inconsistent with the primary intent of the Act (insuring a landlord's right to go out of business)."  The City, in its arguments against field preemption, contends section 7060.1 subdivision (c) of the Government Code gives it authority to mandate enhanced relocation payments.  Section 7060.1(c)'s "safe harbor" provision authorizes cities to mitigate "any adverse impact" from displacement.  (Gov.

12

Code, § 7060.1, subd. (c).) Rent hikes are indisputably an adverse impact caused by eviction, contends the City. The trial court, however, found Ordinance 68-15 to be "not directed at the adverse impacts caused by a landlord's decision (i.e., the need to pay first/last months' rent and a security deposit and to incur moving expenses)" but "*explicitly* implemented to subsidize the payment of rent that a displaced tenant will face on the open market, regardless of income, and it requires this subsidy for two years."

*Pieri*, on which the trial court relied, added reasonableness to its formulation of the prohibitive price standard. There the court found relocation assistance through some form of monetary payments to be a proper form of Ellis-Act mitigation under section 7060.1(c). In considering the validity of relocation expenses, *Pieri* expressly held "reasonable relocation assistance compensation" to be valid and appropriate exercises of a public entity's power to mitigate adverse impacts on displaced tenants under section 7060.1(c). (*Pieri*, *supra*, 137 Cal.App.4th at p. 893.)

However, *Pieri* did not expressly consider the validity of the specific type of monetary payment required by either Ordinance 54-14 or Ordinance 68-15, namely, the payouts based on Rental Payment Differentials—the difference between the tenant's current rent and the prevailing market-rate rent.[4] (S.F. Admin. Code, ch. 37, § 37.9A,

---

[4] *People v. H&H Properties* (1984) 154 Cal.App.3d 894, one of the cases referenced in *Pieri*, concerned an ordinance with a relocation assistance payment provision, but we deem it inapplicable. At issue in *H&H* was a 1980 county ordinance requiring developers of condominium conversion projects to pay displaced tenants a $500 moving allowance plus relocation assistance in the amount of "$1,000 or at the tenant's election, a sum equal to the current monthly rental times the number of years . . . a tenant has occupied the unit . . . ." (*Id.* at p. 898, fn. 1.) The *H&H* court viewed the "formula compensation for future rent increases" to be a reasonable measure. (*Id.* at p. 901.) However, the type of relocation assistance in *H&H* is distinct from the City's Rental-Payment-Differential provisions which are based on higher market rents not attributable to a property owner's decision to leave the rental business. Further, since the 1980 ordinance in *H&H* predated the Ellis Act (enacted in 1985), *H&H* cannot stand for the proposition that relocation assistance requirements aimed at addressing future rent increases are allowed under the Act. *H&H* did not address a preemption challenge, rather it only considered whether the ordinance was a reasonable exercise of the county's police power. (*Ibid.*)

13

subd. (e)(3)(E).)  Indeed, the City acknowledges *Pieri* had "no occasion to consider any other kind of mitigation payment" beyond relocation expenses.  Other than the federal district court's takings analysis in *Levin*, we have found no case which has reviewed an Ellis Act mitigation measure like the rental payment differential before us.  *Levin* described the payment required by Ordinance 54-14 to be "unprecedented in requiring a massive lump-sum payout from one private party to another in exchange for regaining possession of property," further noting "[t]he Court and the parties [were] unable to find any ordinance, anywhere, that does what San Francisco has attempted to do [with Ordinance 54-14]."  (*Levin*, *supra*, 71 F.Supp.3d at pp. 1080, 1089, fn. 8.)

In addressing this new form of mitigation posed by Ordinance 54-14 and Ordinance 68-15, cases interpreting the Ellis Act are instructive.  Ordinances which condition a landlord's right to go out of business on compliance with requirements not found in the Ellis Act have been invalidated because they impose a prohibitive price on a landlord's right to go out of business.  (See *Javidzad*, *supra*, 204 Cal.App.3d at pp. 530, 531 [ordinance preempted "because it impermissibly condition[ed] the landlord's right to go out of business on compliance with requirements not found in the [Ellis] Act"]; *Lincoln Place*, *supra*, 54 Cal.App.4th at p. 64 [ordinance violated the Ellis Act "because it impermissibly infringed on the owner's right to simply go out of the rental business . . . by refusing to issue a demolition permit based on conditions which are not a part of the Ellis Act"]; *Reidy v. City and County of San Francisco* (2004) 123 Cal.App.4th, 580, 593 [ordinance requiring hotel owners to provide replacement units or pay in lieu fee before being able to remove rental units from market preempted because it "effectively conditioned the right of a [San Francisco] hotel owner to go out of the rental business" on compliance with requirements not found in the Ellis Act].)

In *Bullock*, this District rejected an ordinance requiring residential hotel owners to agree to replace their residential hotel units or to contribute to an "in lieu" fee to a city fund before they could secure a permit necessary to convert their units into hotel units for

14

tourists. (*Bullock*, *supra*, 221 Cal.App.3d at pp. 1080–1081, 1099–1100.)[5] The court stated, "The Ellis Act does not permit the City to condition plaintiff's departure upon the payment of ransom. [¶] To allow the City to so enlarge the concept of mitigation that it prevents plaintiff from exercising his right to go out of business would make the Ellis Act a dead letter except for those owners fortunate enough to have no tenants to displace." (*Id.* at p. 1101.)

Most recently, in *San Francisco Apartment Association*, this District concluded the Ellis Act preempted a San Francisco ordinance requiring a landlord to wait 10 years to merge a withdrawn rental unit into one or more other units. (*San Francisco Apartment Assn.*, *supra*, 3 Cal.App.5th at p. 469.) In the court's view, the 10-year waiting period "impose[d] a penalty on the very class entitled to protection under the Ellis Act . . . landowners seeking to exit the residential rental business." (*Id.* at p. 480.) The court found the ordinance "in effect, barred landowners from using their property if their proposed [subsequent] use involves merging a withdrawn unit with another" and "construct[ed] an inevitable substantive barrier to the statutorily protected right of a landlord to leave the residential rental business." (*Id.* at pp. 482–484.)

Like provisions in past City-enacted ordinances which have been invalidated, the City's Rental Payment Differential obligation places conditions on a landlord's right to go out of business that are not found in the Ellis Act. The Ellis Act contains no requirement that obliges a landlord to pay their former tenants future rental subsidies so that they can leave the residential rental business. In considering the substantial in lieu payment to a City fund that was part of the challenged ordinance in *Bullock*, we stated, "[t]he Ellis Act does not permit the City to condition plaintiff's departure upon the payment of a ransom." (*Bullock*, *supra*, 221 Cal.App.3d at p. 1101.) We see the

---

[5]    *Bullock* also refers to "relocation assistance" provisions to hotel residents in the conversion ordinance, amounting to "a displacement allowance of $1,000 per displaced person" and "actual moving expenses not to exceed $300." (*Id.* at p. 1101, fn. 19.) However, these relocation assistances costs were not placed in issue since the "plaintiff advised the trial court of his willingness to comply with this requirement." (*Id.* at p. 1101.)

15

increased rent payment the City's ordinances obligate landlords to pay their former tenants as a form of ransom which interferes with and places an undue burden on landlords who seek simply to go out of business. We also view the payouts of two years of ongoing rental subsidies—whether or not they reach the $50,000 ceiling set by Ordinance 68-15—as a penalty akin to the 10-year pre-merger wait period invalidated in *San Francisco Apartment Association*. The Rental Payment Differential obligation imposes a prohibitive price on the ability of landlords to exercise their rights under the Ellis Act.

To preserve its ordinances, the City relies on the safe harbor clause in Government Code section 7060.1, subdivision (c), a savings clause in the Ellis Act which preserves local authority to mitigate "any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations." (Gov. Code, § 7060.1, subd. (c).) The City argues the rent hike a tenant experiences upon losing a rent-controlled tenancy "is an adverse impact caused by eviction," noting "any argument to the contrary flies in the face of common sense" and that it "defies language to claim that a rent increase is not an 'adverse impact' of eviction." The superior court declined to endorse the City's logic; it found spiraling rents had no relationship to the adverse impacts caused by a landlord's decision to exit the rental market.

Like the City, we recognize that tenants who have benefitted from the price controls of rent control will likely face dramatically higher market-rate rents for comparable units. But we disagree with the City's analysis that attributes a tenant's future increased rent in new housing to his landlord's decision to exercise Ellis Act rights. This analysis ignores the impact of the City's policy decision to impose residential rent control, creating a rent differential. That policy purposefully causes a tenant's rent to be artificially below market rate, a gap that could be expected to increase with the length of the tenancy. For rent-controlled units, a property owner cannot raise rents beyond the allowable annual rent increases set forth in San Francisco Administrative Code, chapter 37, section 37.3 et seq., and California Civil Code section 1954.53, subdivision (a)(1). As the City recognizes, "the high price of market-rate

16

housing" a tenant faces upon eviction as permitted by the Ellis Act is "the most immediate consequence," a common sense impact, of the artificially low rents a tenant pays as a provided by City-enacted rent control. In our view, the City's presumption that spiraling rents and high housing prices in San Francisco are an adverse impact of individual evictions statutorily permitted under the Ellis Act is a faulty one. Absent this connection, ongoing rental subsidy payments indisputably enlarge the concept of mitigation in a manner not authorized by the savings clause.

Moreover, savings clauses like the one the City relies upon for its authority "are usually strictly construed. [¶] . . . [¶] [C]ourts have refused to interpret savings clauses in a manner that would authorize activity that directly conflicts with the statutory scheme containing the savings clause." (*City of Dana Point v. California Coastal Com.* (2013) 217 Cal.App.4th 170, 195, 203.) A local government's powers to mitigate are not without limits and cannot be enlarged in such a way to prevent a property owner from exercising her Ellis Act rights. (See *Bullock*, *supra*, 221 Cal.App.3d at p. 1101 [circumscribing concept of mitigation by rejecting ordinance provisions that would "require [an] owner to make expenditures that benefit society at large"].) Section 7060.1, subdivision (c) of the Government Code does not allow the City to disregard landlord rights set forth in the Ellis Act in the name of mitigation.

The City also points to California and federal law allowing tenants who are displaced by eminent domain to receive payments based on their higher housing costs following displacement to justify both the type and duration of its newly added payouts. California law, for example, requires that tenants displaced due to eminent domain receive 42 months of rent subsidies not to exceed $5,250 total. (Gov. Code, § 7264, subd. (b).) We view these eminent domain laws as inapposite. In eminent domain, governments draw on public funds to pay just compensation for property they take to ensure that particular private parties do not have to shoulder what should be public burdens. (*Armstrong v. United States* (1960) 364 U.S. 40, 49.) Unlike eminent domain, the City's ordinances place the burden of paying rent subsidies to displaced tenants, to advance the City's public policy objective, on the shoulders of certain private parties who

17

do not draw on public funds to pay the subsidies. Our prohibitive price analysis reflects this distinction. A property owner's lawful decision to withdraw from the rental market may not be frustrated by burdensome monetary exactions from the owners to fund the City's policy goals.

The City also argues that a decision which results in some mitigation payments being approved (e.g., the relocation assistance in *Pieri*) but not others (e.g., the rental subsidies at issue here) effectively writes into the Ellis Act a new restriction in violation of the "cardinal rule of statutory construction that courts must not add provisions to statutes." The principle of statutory construction cited by the City is codified in section 1858 of the Code of Civil Procedure, which provides that a court must not "insert what has been omitted" from a statute. (Code Civ. Proc., § 1858.) That same provision begins, "In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein." (*Ibid.*) "[I]t is the duty of the courts within the framework of the statutes, to interpret them so as to make them workable and reasonable." (*Golden v. City of Oakland* (1975) 49 Cal.App.3d 284, 288.) We disagree with the City's contention that our analysis will add new restrictions to the Ellis Act; our decision does not go beyond interpreting the savings clause the Legislature included in the statute.

Finally, we need not address the City's concern that its ordinance cannot be preempted on a facial challenge given the range of potential mitigation payments possible. The City complains that the Coyne plaintiffs "have never attempted to show that all or most landlords will be *unable* to exercise their Ellis Act rights if the [a]mended [o]rdinance is upheld." Citing *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, the City recognizes that "[a] facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Id.* at p. 1084.) Our decision invalidating the City's enhanced relocation payment requirements of these ordinances does not apply the City's ordinances to any plaintiff or other individual and depends not at all on whether a landlord owes an evicted tenant one dollar over the $4,500 per-person-maximum-

18

relocation payment currently due an evictee under Ordinance 21-05 (before adjusting for inflation). It does not consider whether a landlord must pay the $50,000 maximum Ordinance 68-15 allows. Rather, we conclude the City's enhanced relocation payment regulations are on their face preempted as categorical infringements which impose a prohibitive price on a landlord's right to exercise his rights to go out of the residential rental business. Because there is no set of circumstances under which we view this type of payout obligation as valid, we make no conclusions about their application or what particular relocation payment threshold imposes a prohibitive price.

### D. *The City's Additional Procedural Requirements May Also Impose a Prohibitive Price on Landlords Withdrawing from the Residential Rental Business*

The *Coyne* plaintiffs also challenge new procedural requirements in the City's ordinances. They contend the declaration process, the fee calculation process, the hardship adjustment petition procedure, and the three-year monitoring period in the ordinances are themselves facially preempted. And the *Coyne* plaintiffs dispute the City's contention that by creating procedures to mitigate the potential financial hardship of the challenged ordinances, the City avoids preemption.

In light of our decision invalidating the Rental-Payment-Differential provisions as preempted, we recognize that we need not address these challenged procedural requirements of the ordinances, all of which stem from and are triggered by the enhanced relocation payment provisions. Nevertheless, we express our concern about the validity of such procedures, should the parties consider the enactment of similar remedies in future efforts to mitigate the adverse effects of Ellis Act evictions.

We observe ordinances which have inserted additional notification requirements and other procedural elements into the Ellis Act eviction process have previously failed. For instance, in *Johnson*, this District considered an ordinance requiring landlords to inform evicted tenants whether they believed those tenants were owed increased relocation payment based on their age or disability. (*Johnson*, *supra*, 137 Cal.App.4th at p. 16.) The court ruled it was preempted because "it create[d] a substantive defense in eviction proceedings not contemplated by the Act." (*Id.* at p. 18, fn. omitted.) In

19

reaching this decision, *Johnson* reviewed the Ellis Act's provisions regarding notice requirements to tenants[6] and observed, "By carefully spelling out certain types of notice which public entities may require, the Act clearly indicates that *only* these types are authorized and other, additional notice requirements are not permissible." (*Id.* at p. 16.) The court also considered several ways a landlord's statements under the "belief requirement" could complicate unlawful detainer proceedings by resulting in tenant challenges to the accuracy of the landlord's belief or tenant claims against the landlord if the landlord mistakenly suggests the tenant has a disability. (*Id.* at p. 17.) The court deemed the "belief requirement" placed a "prohibitive price on a landlord's right to exit the rental market." (*Id.* at p. 18.)

Similarly, the mandatory declaration process and fee calculation requirements in Ordinance 68-15 also may impose a prohibitive price on landlords seeking to leave the residential rental business.

The tenant declaration requirement added by Ordinance 68-15 obligates a withdrawing property owner to provide a tenant with a declaration form and notify the tenant that the landlord does not have an obligation to make any portion of the relocation payment prior to the landlord's receipt of the declaration. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(E)(iv).) Presuming the tenant will return the signed declaration to the landlord, the ordinance gives the tenant control over the timing and return of the declaration and thereby invites added delay to the process. In our view, the tenant declaration and accompanying notice requirement resemble the requirement struck down in *Johnson* that landlords give notice of the payment amount they believed they owed their tenants. (*Johnson*, *supra*, 137 Cal.App.4th at p. 11.)

The fee calculation process also may present an unauthorized procedural prerequisite to the exercise of the Ellis Act right to withdraw. Under Ordinance 68-15,

---

[6] Section 7060.4, subdivision (c) of the Government Code sets forth the subject matters about which landlords must notify evicted tenants. These include notice to the tenant of certain rights under the Ellis Act and notice that the tenant, if disabled or elderly, is entitled to extend her tenancy by a year in certain circumstances. (See Gov. Code, § 7060.4, subd. (c).)

landlords who are subject to a Rental-Payment-Differential payout for their withdrawn rentals, are required to determine the correct amount due their tenants. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(E)(i).) To determine the correct amount, landlords must first perform certain calculations; to do so landlords must know the number of bedrooms in a unit, which turns on whether a "space is used primarily as a quarters for sleeping." (S.F. Admin. Code, ch. 37, § 37.9A, subds. (e)(3)(E)(ii) & (e)(3)(E)(vi)(a).) Like the "belief requirement" in *Johnson*, this fee calculation requirement amounts to guesswork for landlords which can lead to an underpayment to tenants if calculated incorrectly and a substantive defense to an Ellis Act eviction based on such procedural noncompliance. (See *Johnson*, *supra*, 137 Cal.App.4th at p. 18.) In short, each of these new processes appears to place requirements on landlords inconsistent with their unfettered right to go out of business.

We note similar concerns for the non-mandatory procedures set forth in the amended ordinances—the hardship adjustment petition process enacted in the Ordinance 54-14, and left undisturbed by Ordinance 68-15 and the three-year monitoring period Ordinance 68-15 makes available to landlords to monitor the relocation expenses of their former tenants. These, too, appear to delay the ability of landowners availing themselves of these procedures to leave the rental business and cloud their exits with uncertainty.

The hardship petition process sets up the manner in which property owners seek relief from the Rent Board if the relocation payments cause financial hardship. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(G)(i).) Landlords can submit a range of evidence—their income, assets, expenses, debts, health, and health care costs—to the Rent Board, which may reduce the payout or order other relief. (*Ibid.*) The ordinance contains no information about the standard, if any, the Rent Board would use to evaluate such a petition, or the duration of such a proceeding. Inasmuch as the showing landlords must make to successfully establish entitlement to hardship relief is ambiguous and ripe to be challenged, this process adds further delay to the Ellis Act process. Forcing an owner to endure an uncertain administrative procedure of unknown duration requiring the

21

disclosure of sensitive personal information simply to find out whether relocation payments are financially prohibitive may impose a prohibitive price on Ellis Act rights.

The three-year monitoring period requires evicted tenants to document their relocation expenses by keeping receipts and providing them to their former landlords upon request or else reimburse landlords for any payments the tenant cannot demonstrate were used for allowable Relocation Costs. (S.F. Admin. Code, ch. 37, § 37.9A, subd. (e)(3)(E)(v).) This monitoring option may also impose a prohibitive price on landlords seeking to leave the residential rental business. Landlords wanting to avail themselves of this process, to ensure the thousands of dollars they are obligated to pay their displaced tenants are properly spent, must undertake this burdensome procedure which binds landlords to their tenants for a lengthy three-year audit period—a process antithetical to going out of the landlord business completely. While a landlord may cease being a landlord in the technical sense, this provision means the business would remain on a long leash for several years.

We understand that the hardship petition process and the three-year monitoring period are non-mandatory and that landlords maintain the discretion to exercise these rights. Nonetheless, "a locality may not impose additional burdensome requirements upon the exercise of state statutory remedies that undermine the very purpose of the state statute." *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1273.) Agreeing with the *Coyne* plaintiffs, the City itself acknowledges, "[I]f the administrative relief provisions were so time-consuming in practice that they prohibited landlords from carrying out evictions within the time frames specified by the Ellis Act (§ 7060.5), then the Amended Ordinance would be unlawful as applied to landlords who qualified for administrative relief." The discretion afforded to landlords in deciding whether to utilize such remedies may not render such procedures exempt from a preemption challenge.

Based on our decision invalidating the challenged relocation payment provisions, we do not address the several remaining arguments raised by the parties with respect to field preemption and preemption by state unlawful detainer statutes; "irreconcilable

22

conflict" with state law; or the retroactive application of the ordinances. Our decision makes further analysis unnecessary. Also, because "[c]onstitutional issues will be resolved only if absolutely necessary and not if the case can be decided on any other ground," we refrain from considering the parties' due process, privacy, and takings arguments. (*Community Redevelopment Agency v. Force Electronics* (1997) 55 Cal.App.4th 622, 630.)

## DISPOSITION

The superior court judgments are affirmed.

_____

Jones, P. J.

We concur:


_____

Simons, J.


_____

Needham, J.

A145044, A146569

Martin J. Coyne et al., v. City and County of San Francisco (A145044 & A146569)


Trial Court:    San Francisco County Superior Court

Trial Judge:    Hon. Ronald E. Quidachay

Counsel:

Dennis Jose Herrera, City Attorney, Wayne Kessler Snodgrass and Christine Van Aken, Deputy City Attorneys, for Defendant and Appellant.

Zacks, Freedman & Patterson, Emily H. Lowther and Andrew Mayer Zacks for Plaintiffs and Respondents.

J. David Breemer and Caleb R. Trotter for Pacific Legal Foundation as Amicus Curiae on behalf of Respondents.

Nielsen, Merksamer, Parrinello Gross & Leoni, James Richard Parrinello, Christopher Elliott Skinnell and James W. Carson for San Francisco Apartment Association, The Coalition For Better Housing and The San Francisco Association of Realtors as Amici Curiae on behalf of Respondents.